No. 29,460.

PAUL C. AIKEN, a Minor, by FLORENCE E. WESTGATE, His Mother and Next Friend, *Appellant*, v. A. G. ENGLISH, as Executor of the Last Will and Testament of E. J. Westgate, Deceased, et al., *Appellees*.

(289 Pac. 464.)

Opinion filed July 5, 1930.

*Robert Garvin, Evart Garvin*, both of St. John, and *Carl Van Riper*, of Dodge City, for the appellant.

*Paul R. Nagle, William Davison*, both of St. John, and *F. Dumont Smith*, of Hutchinson, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by a minor to set aside the will of E. J. Westgate, his stepfather, and for an adjudication of his ownership of an undivided one-half interest in all the property comprising his stepfather's estate.

Plaintiff's action was founded upon a tripartite oral contract made in Colorado in August, 1918, between plaintiff, who was then eight years old, and his widowed mother and E. J. Westgate, in which Westgate promised to devise half his property to plaintiff if plain-

tiff's mother would marry him and if plaintiff would live with him as his son. The petition alleged:

"That in the month of August, 1918, the said E. J. Westgate came to Estes Park, Colo., and for about a week stayed at a private residence near Prospect Inn above referred to, and during that week's time visited with plaintiff's mother and with the plaintiff and talked with them about the marriage of plaintiff's mother to said E. J. Westgate, and about the plaintiff's and their plans for the future; that in said conversations with plaintiff's mother and with plaintiff the said E. J. Westgate stated that his physical condition was such that he needed a home and the care of a wife, that he was getting old and missed much of the happiness of life because he had never had a loving family, that he was childless and he felt that it would afford him much happiness to have the plaintiff in his home as his own. . . . That he had abundant means and property to provide for the plaintiff's mother and the plaintiff as well as himself; that he wanted her to marry him and permit him to take care of her and the plaintiff; that he was very fond of the plaintiff and desired to have plaintiff live in the home with himself and the plaintiff's mother; that he had no one else to care for or who had any claim upon him for his money or property and that he desired to have her and the plaintiff to share his property at his death; that said E. J. Westgate proposed and said that if the plaintiff's mother would marry him and bring plaintiff into his home, and if the plaintiff would live with him and give him his love and companionship and affection . . . he, the said E. J. Westgate, would leave at his death to the plaintiff's mother one-half of all of his property and would give and leave to the plaintiff the other one-half of all of his property, and that he would, so long as he should live, take care of plaintiff's mother and the plaintiff, give to plaintiff the means to acquire a good education and to start plaintiff in business when he should reach the age to do so.

. . . . . . . . . . . . . . .

"That the plaintiff's mother and the plaintiff accepted the said offer of the said E. J. Westgate and agreed to the terms and conditions thereof, and thereafter, and on the 17th day of August, 1918, at Denver, Colo., the plaintiff's mother and the said E. J. Westgate were duly married to each other; that all of said offers, propositions, agreements and acceptances were oral and none of them were ever reduced to writing; that after said marriage the plaintiff went into the home of said E. J. Westgate and the plaintiff's mother and treated the said E. J. Westgate as his father and was dutiful and obedient to him until his death, and gave the said E. J. Westgate his love and affection and companionship and fully performed on his part all of the terms of said agreement. . . ."

Westgate died testate in Stafford county, Kansas, in August, 1928. By his will he devised to his wife, mother of this plaintiff, whatever portion of his property the law would confer on her, not exceeding one-half thereof, and devised all the remainder to his next of kin.

Westgate's estate consisted chiefly of 1,600 acres of Kansas land, some town lots, and personalty of the value of $7,344.75.

The widow elected to take her statutory share of one-half of Westgate's estate under the law and not under the will, and caused this action to be brought as next friend of her minor son to enforce the oral contract outlined above.

The executor and Westgate's heirs and devisees lodged a demurrer to plaintiff's petition on various grounds—no cause of action stated, and the invalidity of the oral contract sued on under certain provisions of the statute of frauds. This demurrer was sustained.

Plaintiff appeals, placing his chief reliance on that line of cases which holds that an oral promise to give or devise property to a person in consideration of services is enforceable when such services have been fully performed, and particularly where they cannot be adequately valued and compensated in money. Familiar cases involving that point are: *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743; *Bichel v. Oliver,* 77 Kan. 696, 95 Pac. 396; *Heery v. Reed,* 80 Kan. 380, 102 Pac. 846; *Hickox v. Johnston,* 113 Kan. 99, 213 Pac. 1060; *Bateman v. Franklin,* 114 Kan. 183, 217 Pac. 318; *Rooney v. McDermott,* 121 Kan. 93, 246 Pac. 183.

Apparently most of Westgate's estate consisted of real property. As against that property the oral contract would not be enforceable even if the consideration had been of a character which would otherwise be regarded as sufficient. In *Engelbrecht v. Herrington,* 103 Kan. 21, 24, 172 Pac. 715, it was said:

"The general rule is that every parol contract concerning lands is within the statute of frauds and perjuries and unenforceable except where the performance cannot be compensated in damages. The fact that the consideration for the contract was to be paid in services, and not in money, makes no difference in the application of the rule. If the value of the plaintiff's services may be determined and compensation made in money the case is not taken out of the statute."

Here, however, the consideration of services was lacking, and this court's difficulty is to discover some other substantial element in the tripartite agreement which would supply a valid consideration even if the statute of frauds can be gotten rid of. The pleaded consideration was that plaintiff, at eight years of age, agreed to his mother's marriage to Westgate and agreed to live with Westgate as his son and give him his companionship and affection. It is on the performance of that agreement from the time he was eight years old until he was eighteen plaintiff claims one-half of Westgate's estate. So far as this precocious plaintiff's consent to his mother's marriage

is concerned, the tripartite contract was nonenforceable. The pertinent provision of the statute of frauds reads:

"No action shall be brought whereby . . . to charge any person upon any agreement made upon consideration of marriage . . . unless some memorandum or note thereof shall be in writing and signed by the party to be charged therewith. . . ." (R. S. 33-106.)

If the contract sued on be construed as one made by plaintiff's mother in his behalf it still flies in the face of the statute just quoted and is unenforceable. One of the judicial qualifications engrafted on the statutory rule just quoted goes so far as to hold that performance by one of the parties to an oral agreement made upon consideration of marriage will make such contract enforceable as to other parties than the spouses themselves. The oral consent of plaintiff to his mother's marriage to Westgate added nothing to the validity of the agreement of his mother and Westgate to marry; and no precedent is cited, and we have discovered none, which holds that an oral promise to devise property to a third party in consideration of marriage can be enforced. On the contrary, in the well-considered case of *Fischer v. Fischer*, 106 Neb. 477, 21 A. L. R. 306, it was held:

"A verbal contract whereby a widower with five minor children promises an unmarried woman, pregnant by a third person, that if she will marry him and be a mother to his children, he will make her child, when born, an equal heir with the others in his estate, is void under the third subdivision of § 2630, Rev. Stat. 1913." (Syl. ¶ 1.)

In *Austin v. Kuehn*, 111 Ill. App. 506, affirmed in 211 Ill. 113, it was held that an oral promise to leave the promisee a sum of money in consideration of her marrying a third person was within the statute of frauds and void.

In Browne on Statute of Frauds, 5th ed., § 215a, it is said:

"It appears to have been once considered that the statute applied only to these cases of marriage settlements properly so called, but it is now settled, at least by American authority, that it is not so limited, but extends to any agreement to undertake any duty or office in consideration of another's contracting a marriage, whether with the promisor or with a third person."

While quoting from this textbook we do not overlook our own decisions which have held that the oral contract is taken out of the statute as between the parties to the marriage by performance. So far as concerns third parties the rule stated by the author is as potent here as anywhere.

In the recent case of *Foster v. Foster*, 129 Kan. 132, 281 Pac. 902, the action was to enforce an oral contract between a daughter-in-

law and the grandfather of her children, in which it was alleged that the grandfather had promised that if the plaintiff and her four young children would leave their home in Kansas City and come to Waverly to reside, so that the grandfather could enjoy the companionship and affection of the children, he would purchase a house suitable for their occupancy and assist in paying their living expenses and at his death he would devise the property to plaintiff. She alleged full performance on the part of herself and the children. Her petition and the opening statement of her counsel stated all the pertinent facts, but the trial court and this court held that, given their strongest significance, they failed to state a cause of action.

The court is constrained to hold that the oral contract relied on by plaintiff lacked a valid and sufficient consideration for its support, and that the statute of frauds rendered it nonjusticiable.

The judgment is affirmed.