No. 36,122

In re Estate of B. J. Pallister, Deceased. (INA T. PALLISTER, Administratrix, etc., *Appellee* and *Cross-appellant*, v. MABEL COLLE et al., *Appellants*.)

(152 P. 2d 61)

8

Opinion filed September 30, 1944.

*A. Lewis Oswald,* of Hutchinson, argued the cause, and *John Fontron, John M. Farley, John Alden,* all of Hutchinson, and *Evart Garvin,* of St. John, were on the briefs for the appellants.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Warren H. White, Frank S. Hodge, William H. Vernon, Jr.,* and *Eugene A. White,* all of Hutchinson, were on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is primarily an appeal from an order admitting a will to probate.

B. J. Pallister, the testator, was a resident of Rice county. In 1941 he was united in marriage to Ina T. Savage. On May 28, 1942, he executed the instrument in question. About two weeks later, on June 14, he died at the age of seventy-two, leaving as his heirs at law his widow, Ina T. Pallister, the appellee here, and five grown sons and daughters, the appellants. After the will was offered for probate the three sons and two daughters filed a petition in opposition. Subsequent proceedings need not be recited in detail, as their regularity is not questioned. R. E. Wyatt and Everett L. Baker were attesting witnesses. Wyatt testified as to the execution and attestation of the instrument, and several witnesses testified as to the genuineness of the signature of Baker, who was then in the military service. Opponents of the will offered no evidence. The probate court found that the will had been duly signed and attested, that the testator was of sound mind and under no undue influence when it was executed, and admitted it to probate. Ina T. Pallister was appointed

administratrix with will annexed. Appeal was taken to the district court, where the appellee moved that appellants be required to file pleadings "setting forth their contentions and all matters sought to be proved in their appeal." An "amended and supplemental" petition in opposition to the will was thereupon filed by appellants. After full hearing the district court, on November 16, 1943, sustained appellee's demurrer to appellants' evidence, upheld the will, and made certain specific findings to which further reference will presently be made. Motion for new trial was made and overruled, after hearing, on January 6, 1944. This appeal followed.

Before considering the case upon its merits we take note of appellee's contention that the district court was without jurisdiction to entertain the appeal from the probate court. While it does not appear that this question was raised in the court below, a question of jurisdiction of the subject matter of an action may be raised at any time. (4 C. J. S. 126-128; *Russell v. State Highway Comm.,* 146 Kan. 634, 73 P. 2d 29; *Tucker v. Tucker,* 97 Kan. 61, 62, 154 Pac. 269; *Vrooman Co. v. Summer,* 110 Kan. 662, 205 Pac. 609.) And if the district court was without jurisdiction, this court acquires none by the appeal. (*Armour v. Howe,* 62 Kan. 587, 592, 64 Pac. 42.)

Appellee rests her contention that the district court was without jurisdiction upon our recent decision in *In re Estate of Grindrod,* 158 Kan. 345, 148 P. 2d 278. She argues that inasmuch as those opposing the will offered no evidence in the probate court, and that that court had no opportunity to hear and weigh their evidence in support of the objections they had filed, the appeal was tantamount to starting the action in the district court, and that that cannot be done since original jurisdiction to entertain such an action is exclusive in the probate court.

It is unnecessary to go over again the ground covered in the Grindrod case. Suffice it to say that in the Grindrod case no objections of any kind were made in the probate court to the validity of the will or to its probate and no steps were taken to vacate or set aside the order of probate. In other words, opponents of the will had begun no action, had in no way invoked the jurisdiction of the probate court. In the instant case a very different situation is presented. Opponents of the will did institute action in the probate court. They filed a "Petition in Opposition to Probate of Will" in which they alleged fraud, coercion, undue influence, and that Ina T.

Pallister, for the purpose of wrongfully and fraudulently depriving them of an interest in the property of their father "by use of undue influence and coercion forced the said B. J. Pallister to execute said instrument in violation of a prior agreement and contract which had been entered into by the said B. J. Pallister and these petitioners and also with the said Ina T. Pallister."

The statute relating to the right of appeal to the district court from orders of the probate court (G. S. 1943 Supp. 59-2401) does not, in specific terms, impose any condition upon the right to appeal from "(1) an order admitting, or refusing to admit, a will to probate." In the Grindrod case we held, however, that in the light of other provisions of the probate code and of recent decisions construing its terms and intent, no appeal lies from an order admitting a will to probate where no objections have been filed or other steps of any sort taken in the probate court in opposition to the probating of the will.

It was made clear that the Grindrod decision covered only the situation there presented. We find no sanction in the statute for expanding the doctrine of the Grindrod case and cutting off right of appeal where opponents of a will have filed their objections in the probate court, where they have filed a petition there in the manner contemplated by the code. (G. S. 1943 Supp. 59-2210.) If we were to hold that the right of appeal provided in 59-2401, G. S. 1943 Supp. is cut off because the opponents had not offered their evidence in probate court the question would at once arise as to how much evidence they must introduce in order to preserve the right of appeal. And that query would lead directly to the question of whether any new or additional evidence could be offered at the trial in district court. Obviously, if new and additional evidence is to be admitted in the district court, that would destroy the very basis upon which we are asked to hold that evidence must be offered in probate court in order to establish a right to appeal. It would be a futile thing to condition the right of appeal upon the submission of *some* evidence—however slight—in probate court if, upon appeal, additional and wholly different evidence is to be admitted when the case is tried in the district court. But to say that no new or additional evidence could be introduced in the district court would clearly contravene the statute which provides for trial *de novo* upon appeal to the district court. Upon appeal the litigants are not limited to the record made in the probate court, but new pleadings may be filed

or amended and the case is heard in district court as though that court had original jurisdiction of the matter. G. S. 1943 Supp. 59-2408, which applies to appeals in all classes of cases, provides:

"Upon the filing of the transcript the district court, without unnecessary delay, shall proceed to hear and determine the appeal, and in doing so shall have and exercise the same general jurisdiction and power *as though the controversy had been commenced* by action or proceeding *in such court* and as though such court *would have had original jurisdiction of the matter.* The district court may allow or require pleadings *to be filed or amended . . ."* (Italics supplied.)

It follows that the district court had jurisdiction of the action. We proceed to the merits.

The terms of the will are not in dispute. The testator gave to his wife the automobile, the household furniture and the home place in the city of Sterling. He held a three-fourths interest in this real estate, his five children owning the remaining one-fourth. He expressed the wish that the children convey their one-fourth interest to his wife, and bequeathed to his wife the sum of $2,000 in lieu thereof if they failed to do so. One-half of the residue of the estate, real and personal, was left to the wife, and the remaining one-half to the five children share and share alike. In the event the testator survived the wife the entire estate was to go to the children share and share alike. In the will the testator also recited the fact that he had theretofore sold certain described real estate to Minnie Pallister, wife of his son Glen Pallister, and placed the deed in escrow. He confirmed the sale and directed his executor to complete it according to its terms.

The amended and supplemental petition filed in the district court was quite lengthy and need not be set out in full. Petitioners alleged that when the instrument was executed their father "was sick, mentally and physically, and was unable, mentally or physically, to resist the undue influence and coercion exercised by the said Ina T. Pallister upon him and executed said instrument as a result of the undue influence and coercion of the said Ina T. Pallister." They also set out at length an oral agreement which they alleged had been entered into between them, their father, and Ina T. Savage prior to the marriage, under which she was to receive only a one-sixth interest in his estate. In other words, she would renounce her right to a one-half interest in case she survived her husband, and would share equally with the children. It was upon this alleged contract which appellants contend was fully performed by them and was

valid as against the will that they principally relied in the court below and to which their argument is mainly directed here.

The issues here would not be clarified by extended recital of the evidence. No effort was made—prior to hearing on a motion for a new trial—to establish the allegation that the testator was mentally incompetent when the will was executed.

It is true that on January 6, 1944, upon the hearing upon appellants' motion for a new trial, Everett L. Baker, one of the attesting witnesses—home on furlough from his military service—testified at some length with reference to the circumstances connected with the drafting and execution of the will and it might be said that his testimony, if admitted, would throw some doubt upon the testator's mental competency at the time. Appellee objected to the admission of such testimony upon the ground that any issue as to mental competency had been adjudicated in the trial and that the testator's competency to make a will had been admitted by appellants. Appellants contend that the court erred in excluding this testimony. We find no error in the ruling and think it unnecessary to recite the proffered testimony of Baker. The issue had been settled in the trial and there was ample, specific evidence to sustain the court's finding that the testator was competent. Furthermore, the witness did not deny that the will was signed in his presence and that he signed as an attesting witness. It cannot well be suggested that he would act in that capacity if he believed at that time that the testator was mentally incompetent.

Material portions of the court's findings were as follows:

"The Court finds that the Last Will and Testament of B. J. Pallister, deceased, which was admitted to probate in the Probate Court of Rice County, Kansas, on July 16, 1942, and which Will was admitted in evidence herein, *was made and executed* by the said B. J. Pallister, when he *was able and capable mentally to make and execute said will and that no evidence existed or was offered in the trial of said action to show undue influence or fraud in the execution of said Will. That the contestants of the Will in open court admitted that B. J. Pallister was mentally capable of executing a valid will at the time of said execution thereof.* (Italics supplied.)

.   .   .   .   .   .   .   .   .   .   .   .

"The Court finds that said Last Will and Testament of B. J. Pallister, was in all respects duly executed, made and proved as by law required and that said Estate of B. J. Pallister, should be administered and distributed in full accordance with said Last Will and Testament in the Probate Court of Rice County, Kansas.

.   .   .   .   .   .   .   .   .   .   .   .

"The Court finds that B. J. Pallister, before his marriage to Ina T. Pallister in September, 1941, entered into an oral agreement between himself and his children; that in consideration of his children accepting Ina T. Pallister, after his marriage to her, as a member of the family and treating her with respect and consideration as his wife and accepting her socially as a member of the family, that the estate of B. J. Pallister would be divided one-sixth (1/6) to Ina T. Pallister and one-sixth (1/6) to each of his children, . . .

"The court finds that the plaintiffs ·. . . accepted the offer of their father, B. J. Pallister, as set forth in finding hereinbefore made. The court further finds that Ina T. Pallister was advised and informed prior to her marriage with B. J. Pallister of the terms and conditions of said oral contract between the said B. J. Pallister and his said children above named; that Ina T. Pallister, prior to her marriage with B. J. Pallister, orally consented and agreed to said contract between said B. J. Pallister and his children.

"The court finds that after the marriage of B. J. Pallister and Ina T. Pallister, that Ina T. Pallister orally confirmed and consented to the terms of said contract and orally agreed to be bound by the terms thereof and orally consented and agreed with the said B. J. Pallister and his children that she would receive only a one-sixth (1/6) of the estate of the said B. J. Pallister and that each of said five children of the said B. J. Pallister would each receive a one-sixth (1/6) interest of said estate.

"The court finds that the said oral contract between the said B. J. Pallister and his said children was fully performed during the life time of B. J. Pallister upon the part of his said children. The Court further finds that in compliance with their agreement, the said children of B. J. Pallister accepted the said Ina T. Pallister as their stepmother and as the wife of their father and accepted her socially and as a member of the family and gave her consideration and respect as the wife of their father. The court finds that during the life time of the said B. J. Pallister, after his marriage to the said Ina T. Pallister, that the family relationship existing between the said Ina T. Pallister and said children was cordial and friendly and in full compliance with the oral agreement upon the part of said children."

The issue of undue influence does not require extended discussion. The trial court found that there was no evidence to show undue influence and sustained a demurrer. Appellants first contend that undue influence is patent on the face of the will itself. They base this contention upon a statement appearing in the paragraph in which Ina T. Pallister gave her consent to the provisions of the will, the statement being that she "expressly consents that said B. J. Pallister may bequeath away from her more than one-half of his property." They say this statement is meaningless since the will gave her more than one-half. In the first place, we are not prepared to say as a matter of law, not knowing all the facts, that the provision heretofore referred to, wherein the testator directed completion of a sale of certain real estate to his daughter-in-law, Minnie

Pallister, would have no bearing upon the question of whether the will actually gave the wife more than one-sixth of the estate. In any event we cannot agree that the statement, even if meaningless or inconsistent, constituted evidence of undue influence.

Appellants also call attention to an observation by the trial court, before sustaining the demurrer, that "there isn't any evidence of undue influence in this case except the letter which is plaintiff's exhibit 2." They say that this was an admission that there was some evidence and that the demurrer should therefore have been overruled. We think the context indicates that the court meant that the letter was all that had been offered along that line and that it did not regard it as evidence of undue influence. Immediately following was a finding that there was no evidence of undue influence. The letter, produced by a witness who said the testator gave it to him in a sealed envelope about a week before his death to be delivered to one of the children "if there is any trouble appears," was as follows:

"Dear Children

"I am having a friend write this for me so you children will know that I did the best I could for you in my will. I am going to give this to Roy Considine to be given to you if anything should happen to me. I am sorry that I had to give Ina the furniture, car and the place in *in* town besides her one-sixth but she wouldn't sign the *agreement* on the will unless I did. I am very sorry that this had to happen but I want you children to know that I kept my word to you as near as I could.

"Your loving papa
"B. J. Pallister"

Appellants argue that undue influence is shown by the fact that the letter refers to *one-sixth* of the property whereas the will gave her *one-half*. However inaccurate or inconsistent with the will the statement may be said to be we cannot say that it shows undue influence. No ground has been shown for setting aside the finding of the lower court, trier of the facts.

We come to appellants' principal contention,—that the will was invalid because in contravention of an oral agreement made prior to the marriage. The trial court—as above noted—found that an oral agreement had been made but upheld the will, notwithstanding. Briefly stated, the oral agreement was that if the five sons and daughters would accept Ina Pallister socially as a member of the family and treat her with respect and consideration, and give her their love and affection, their father would divide his estate, by will, one-sixth to each of them and to Ina Pallister.

It may be observed that in the objections filed in the probate court no facts were set out to indicate the nature of the alleged oral contract, the statement simply being that the will was executed "in violation of a prior agreement and contract." Had this been the only grounds alleged in opposition to probate, it might, perhaps, have been contended that no cause of action was stated, that there-fore no action was begun in the probate court and that under the doctrine of the Grindrod case, *supra*, no appeal would lie to the district court. But we need not consider that question. The petition also contained allegations as to mental incompetency and undue influence clearly sufficient to state a cause of action. Having obtained jurisdiction, upon appeal, the district court was empowered to hear the case *de novo*, and upon motion of appellee a supplementary and amended petition—specifically authorized by the statute—was filed in which appellants set out fully the nature of the alleged contract.

Before proceeding to the main issue we take note of appellee's suggestion that the proceeding in opposition to the will may be barred under the nonclaim statute, G. S. 1943 Supp. 59-2239, being in the nature of a claim against the estate and the amended petition having been filed more than nine months after the first published notice to creditors. As to that we need only say that the proceeding by appellants was clearly in the nature of a contest of a will. In a line of decisions—long antedating the present probate code—we have held that any action whose plain and essential purpose is to get rid of a will, to effect a result contrary to the obvious intent of the testator, is an action to contest the will and must be brought in conformity with the statutes dealing with that subject matter. (*Yeager v. Yeager*, 155 Kan. 734, 735, 129 P. 2d 242, and cases there cited.) It is conceded that if the instant action is of such nature it was filed in time. (G. S. 1943 Supp. 59-2404.)

After hearing all the evidence the trial court sustained a demurrer. While the court's reasons for doing so are not shown by the record it is clear that the court's view was that the oral agreement was unenforceable as against a will, duly executed, without undue influence, by a testator competent to do so.

Appellee says that the oral contract was unenforceable (a) under the statute of frauds (G. S. 1935, 33-106), being an attempt to bind appellee upon an "agreement made upon consideration of marriage" although not "in writing and signed by the party to be charged

therewith"; (b) under the statute of wills (G. S. 1943 Supp. 59-602) which provides that "Neither spouse shall will away from the other more than half of his property . ·· . . unless the other shall consent thereto in writing executed in the presence of two or more competent witnesses," etc.; (c) because it was without consideration.

Appellants contend (a) that the statute of frauds is not a bar because the contract was fully performed upon their part; (b) that the contract is valid as a "family settlement"; (c) that the respect, the love and affection, the cordial acceptance of the stepmother as a member of the family which they agreed to give or accord constituted valid consideration to support the contract.

In the light of the evidence and the trial court's findings we find considerable confusion in some of the arguments as to the real nature of the oral agreement. In the first place it was in no sense an agreement between appellee and B. J. Pallister made in consideration of marriage. It is not contended that in consideration of marriage appellee agreed with Pallister to relinquish her statutory right to one-half of her husband's property in case she survived him. There is nothing to indicate that the marriage was in any way conditioned upon the agreement between Pallister and his children. The evidence clearly indicates to the contrary. The approaching marriage between Pallister and the appellee had been determined upon before the conversations took place upon which the appellants rely as showing the agreement with the children.

In the second place, we cannot agree with the contention, strongly urged by appellants, that the agreement is to be regarded as a "family settlement" such as this and other courts have many times upheld. When the agreement was made appellants had no interest in their father's property. He could do with it as he wished—then, or later by will or otherwise, subject only to the rights of his wife. There could be at that time no controversy over property rights. There could be no dispute for compromise settlement because no beneficial interests then existed. And appellee was not even a member of the family.

The trial court found that prior to the marriage appellee "orally consented and agreed to said contract *between said B. J. Pallister and his children.*" Construing that finding in the light most favorable to appellants it means that appellee consented that Pallister might, by will, reduce her share to one-sixth if his children would accept her "socially as a member of the family" and treat her "with

respect and consideration as his wife." We need not go into the question of whether, under any view of the matter, her consent that Pallister might execute such a will would have any binding effect upon her in case he decided to make a different sort of will. In any event what was the consideration moving to her to support her consent? Appellants say that it was the promise of the children to give her their respect and consideration, their love and affection as the wife of their father, and to accept her "socially as a member of the family." She would be entitled to that regardless of any agreement. Aside from appellants' contention—not upheld by the findings—that she unduly influenced him in the making of the will, there is nothing in the record to indicate that she was not entitled to their respect and consideration. And if she was not, then the appellants can hardly be heard to say that they would accord respect and accept her socially in the family in return for property concessions.

Appellants cite many cases where love and affection are held sufficient consideration to support a conveyance. There is no need to review cases of that sort. The principle is well established, but it is not applicable here. In the first place such cases deal generally with grants or conveyances between husband and wife, parent and child, or where some other such relationship exists. There is no such conveyance here involved. And what is still more important, the whole theory upon which love and affection is regarded as sufficient consideration to support a conveyance is based upon a then existing sentiment on the part of the grantor. But that is not the nature of appellants' contention here. They do not contend that appellee agreed to a reduction in her share of the estate because of love and affection which she bore to them. Nor do they argue that they gave up some right which was theirs because of love and affection which they had towards her. Though doubtless not so intended appellants' argument on this point comes down to a contention that respect, love and affection may be made the subject of bargain and sale. We know of no case where the giving or withholding of such attitude or sentiments are held to be legal consideration to support a contract. Indeed, the general rule is that even where love and affection exists it does not alone constitute sufficient consideration to support a promise. (12 Am. Jur. 569, 570; 17 C. J. S. 438.)

Appellants cite 13 C. J. 326, where it is said that:

". . . In some jurisdictions, however, love and affection growing out of the relationship of parent and child is a sufficient consideration to uphold either an executed or executory contract between them, and this rule has been extended to an adopted child, . . ."

But in the instant case appellants are relying upon an agreement made with appellee between whom and themselves there was no such relationship as that existing in the cases covered even by the minority holding referred to. Moreover, the great weight of authority is—as stated in the paragraph from which appellants take the above quotation—that a promise founded on a "good" consideration such as that of blood, or of natural love and affection, is a gratuitous one and unenforceable. (See cases cited 13 C. J. 326, note 54.)

In *Aiken v. English*, 131 Kan. 226, 289 Pac. 464, contestant sought to upset the will of his stepfather on the grounds that it breached an oral contract made when he was eight years old between his widowed mother, his prospective stepfather, and himself in which the testator promised that if his mother would marry him and if he— the contestant—would live with the testator as his son and give him his companionship and affection, the testator would leave half of his property to him and half to his mother. He alleged that he and his mother fully performed their obligations under the agreement and that the relationship of father and son continued between his stepfather and himself for ten years and until his stepfather, the testator, died. Citing *Foster v. Foster*, 129 Kan. 132, 281 Pac. 902, and cases from other jurisdictions, it was held that the oral contract "lacked a valid and sufficient consideration" and was unenforceable under the statute of frauds.

We have examined the cases cited by appellants but find none of them controlling on the facts and issues here presented. It would unduly extend this opinion to discuss them. When the instant agreement was made between appellants and their father, with the consent of appellee, the marriage agreement had already been made. Their promise to treat their prospective stepmother with the respect and consideration to which she was entitled, even though fully performed, was not sufficient consideration to support an oral contract as against a will otherwise valid.

Needless to say we are here dealing only with the legal effect of the oral agreement as against a will executed without undue influence and by a testator competent to know what he was doing.

Any question lying solely within the conscience of the litigants is beyond our adjudication.

Having concluded that the oral agreement was without valid legal consideration it is unnecessary to consider other contentions made.

The judgment is affirmed.

HARVEY, J. (concurring specially): Broadly speaking, the record before us presents the question, which was properly raised in the trial court, of the sufficiency of the evidence. On this point we are all agreed that the trial court had ample evidence before it to sustain its judgment. There is presented, also, the question first raised in this court of whether the district court on the appeal that was taken from the probate court had jurisdiction of the subject matter of the action. I concur in the holding that the district court did have such jurisdiction. The statute (G. S. 1943 Supp. 59-2405) states what is required to be done by one who desires to appeal from the probate court to the district court as follows:

"*Requisites.* To render the appeal effective: (1) The appellant shall serve upon the adverse party or his attorney of record, or upon the probate judge for the adverse party, a written notice of appeal specifying the order, judgment, decree, or decision appealed from, and file such notice of appeal in the probate court with proof of service thereof verified by his affidavit. (2) The appellant, other than the state or municipality or a fiduciary appealing on behalf of the estate, shall file in the probate court a bond in such sum and with such sureties as may be fixed and approved by the probate court, conditioned that he will without unnecessary delay prosecute the appeal and pay all sums, damages, and costs that may be adjudged against him. (3) Whenever a party in good faith gives due notice of appeal and omits through mistake to do any other act necessary to perfect the appeal, the district court may permit an amendment on such terms as may be just."

The abstract before us shows that the appellants gave the notice of appeal required by this section of the statute and filed the same in the probate court, together with an affidavit of the proof of such service, and gave the bond required by the statute in the sum required by the probate court, which bond was duly approved by the court. This is all the statute required them to do. In my judgment this court would not be justified in holding that what they did was insufficient.

In none of our decisions prior to *In re Estate of Grindrod* (158 Kan. 345, 148 P. 2d 278), was the above statute involved. What I said in a specially concurring opinion in *Shively v. Burr*, 157 Kan. 336, 139 P. 2d 401, quoted in the partially dissenting opinion of the

Chief Justice herein, was said with reference to the original jurisdiction of the probate court. That was the principal question involved in that case, as it was also in *Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 438, and in each of the other cases listed by the Chief Justice. There was no decision in any of those cases of what an appellant had to do in order to appeal from the probate court to the district court. The question was not at issue in any of those cases. In my judgment the court would not be justified in holding that anything that was said in any of those cases had the effect of nullifying the statute above quoted.

The fact that the legislature passed an act requiring the review of a proceedings before the corporation commission to be heard upon the record made before the commission, and also passed a similar act with respect to proceedings before the workmen's compensation commission, indicate that when such procedure is to be followed the legislature is to make provision therefor. Until the legislature does so with respect to the probate proceedings we should follow the procedure which the legislature has made.

DAWSON, C. J. (concurring in part and dissenting in part): I concur in the affirmance of the judgment on the merits. And since that judgment is favorable to the appellee, I would disregard her cross-appeal which questioned the jurisdiction of the district court to hear and determine matters not fairly raised nor fairly presented in the probate court. And particularly would I do so, rather than impair the confidence of the bench and bar in their reliance on our many recent pronouncements on this subject.

It does not meet this dilemma to suggest the question "how much evidence they [the objectors] must introduce in order to preserve the right of appeal." They offered no evidence; they did not even plead their absurd oral contract in the probate court. An appeal is an address to a higher court to redress some supposed error or injustice committed in the lower court. How could the probate court by its decision commit some supposed error or injustice on any matter it was not asked to decide and did not decide? I do not overlook the fact that on appeal from the probate court the procedure in the district court is by a trial *de novo*. What is a trial *de novo?* It is a new trial on the same issues; not a new trial on other and different issues. A trial *de novo* is provided in the district court so that the cause may be tried before a judge who is

qualified by training and experience to understand and decide complicated issues of law and fact which may too greatly perplex the probate judge who, more often than not, is a layman and not a lawyer. The learned trial judge of the district court can readily discern whether the issues need to be formulated by good pleading; and thus amended pleadings may be allowed or required. But the code only mentions amended pleadings; it does not mention supplemental pleadings. Amended pleadings are better pleadings, clearer statements of the controverted issues to be decided. Supplemental pleadings bring into the judicial controversy matters not theretofore involved in the litigation. For example, in the probate court the objections to the probate of a will may be the testator's want of testamentary capacity, coercion, undue influence, or want of independent advice. On this tender of issues these matters will be heard and decided in the probate court—let us say, against these objections to the probate of the will. But after all we have decided and all we have written since the new code was adopted in 1939, shall we now concede—shall we even intimate—that counsel for the objectors could withhold from the probate court for exclusive use in the district court other objections to the will of which they had knowledge, for example, that the will was a downright forgery and that the attestation of the witnesses was obtained by bribery?

If I should ignore the nice shadings and distinctions which the above opinion would make in the Grindrod case (158 Kan. 345, 148 P. 2d 278) and the one at bar, the other forthright decisions of this court upon which the Grindrod case was predicated cannot be waived aside so easily.

In *Shively v. Burr,* 157 Kan. 336, 342, 139 P. 2d 401, the plaintiffs in an action for wrongful death were nonsuited because they failed to present a timely demand in the probate court against the estate of the wrongdoer. That decision was based on the new statute, of course (G. S. 1943 Supp. 59-301), but likewise upon our decisions interpreting and applying it. One of these was *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438, where the legal question was whether an alleged oral contract for the lion's share of a decedent's estate was originally justiciable in the district court, on the theory that it was unnecessary to timely present a claim therefor in the probate court. The trial court held that the district court had original jurisdiction. We reversed that decision. Pertinent sections of our syllabus read:

"It was the intent and purpose of the framers of the Kansas probate code

and of the legislature which enacted it to grant to probate courts exclusive original jurisdiction over all matters incident and ancillary to the settlement and distribution of decedent estates, except as to any matter over which that code expressly confers concurrent jurisdiction upon district courts.

"The Kansas probate code, which authorizes and directs probate courts to exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before them and which also provides for appeals to the district court with full power of the latter court to hear and determine the action as though that court would have had original jurisdiction of the matter, does not deprive a person of any rights, legal or equitable, but merely determines his remedy." (Syl. ¶¶ 3, 4.)

In his special concurrence to *Shively v. Burr,* supra, Mr. Justice Harvey very pertinently said:

"I think it important, not only to the courts but to the personal representatives of decedents' estates, to those having claims or demands of any character against such estates, and to heirs of the decedent or beneficiaries under his will, to have it known definitely that anyone who has any type of claim or demand against the decedent should present the same to the probate court in which his estate is being administered. I regard it as of but little importance that some persons might analyze our statutes and reach a conclusion that only certain classes of claims should be presented to the probate court, and others of some indefinite classification should be presented in the district court, or that they might change their minds with respect thereto from time to time." (p. 342.)

It is not at all rare in the judicial application of a new statute, particularly one so important as a new probate code, unexpected situations are likely to arise, which will have to be approached, surveyed and decided with deliberation; and sometimes the unqualified language of the statute will constrain the court to declare the law in terms it would willingly avoid. Although our civil code is now thirty-five years old, some of its provisions still call for authoritative interpretation. That is likewise true of the negotiable instruments act, now almost forty years old. So it is in no sense a just criticism of our five-year-old probate code that in its practical operation some surprising results may flow from an application of its text to cases we have to decide.

It should help reconcile critics of our recent decisions respecting the new probate code to recall the history of its drafting, the campaign of popular education which was conducted as to its desirability, and its eventual enactment. The demand for reform in probate court procedure and practice did not originate in Kansas. Some fifteen years ago the bar journals of the leading law schools of the country had a lot to say about the crying need for improvement in

probate procedure and practice. Several new codes were born ou`
of that agitation. In our own state the prestige of our probate courts
(with some notable exceptions) was not high. Not infrequently
lawyers gave them little more respect than they did to litigation be-
fore a justice of the peace. They let the justice of the peace blunder
into whatever sort of decision his lack of training or experience
might lead him, and appeal. And their respect for the rulings of
the probate court was not much better.

But was not the purpose of the new probate code to change that
situation for the better? Yes, but how much for the better? Only
a little? If an objector to the probate of a will makes a half-hearted
objection to the will, but does not follow his objection with a bona
fide presentation of the law or the facts, and keeps back his best
and strongest objections to the will for the exclusive consideration
of a higher tribunal, does he conform with the spirit and intent of
the new code? Everything this court has hitherto said on the sub-
ject compels a negative answer. Indeed the plain letter of the code
declares that the probate courts "shall have and exercise such equita-
ble powers as may be necesssary and proper *fully to hear and de-
termine* any matter properly before such courts." (G. S. 1943 Supp.
59-301 [12].) If this plain language is not enough to declare the
legislative purpose to confer full judicial power on the probate court
to hear such matters as the appellants in this case reserved for the
ear of the district court, just how much more specific ought such
legislative purpose to have been expressed? How can the probate
court fully hear and determine the propriety of admitting a will to
probate if those who have valid objections to its probate do not fully
and fairly present them?

There is nothing more common in appellate courts, state and fed-
eral, than the rule that matters not fairly raised and fairly urged
in a lower court will not be considered on appeal. Why draw an
out-moded distinction between an appeal from a probate court and
any ordinary appeal to a higher court? Over a long stretch of years
the decisions of this court will show how this court has consistently
contributed its coöperative efforts to make new statutes work effec-
tively to serve their legislative purpose. Rarely has this court
adopted a hypercritical attitude to hamstring the legislative purpose.
What possible evil can befall the administration of estates for this
court to continue along in the courageous path it has pursued in
the interpretation of the new probate code since its adoption? None

whatever. Only a lawyers' lingering tradition which we had well-nigh gotten completely rid of is out of step with the recent pronouncements of this court. (*Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364; *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242; *Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565; *Behee v. Beem,* 156 Kan. 115, 131 P. 2d 675; *Egnatic v. Wollard,* 156 Kan. 843; 137 P. 2d 188 and citations; *Foss v. Wiles,* supra; *Shively v. Burr,* supra; *In re Estate of Grindrod,* supra.)

For many years, when the rulings and orders of the corporation commission (by whatever name that tribunal has borne in the last half century) were brought before a court of general jurisdiction for review, by appeal, injunction, or other judicial disposition, it was the usual practice for the court to hear new evidence and new points of law never raised before the commission. The legislature put a stop to that. Now the judicial review is tried on the record made before the commission. The same is now true of the judicial review allowed on the orders of the workmen's compensation commission. Judicial reviews of the orders of the many federal boards and bureaus are dealt with the same way. I can give no countenance to the reactionary idea that a Kansas probate court in 1944 is still such a mean and insignificant tribunal that it can be by-passed on whatever matters inhere in a will which may be too important to be raised and litigated in that court, and that all such can be reserved for the exclusive original jurisdiction of the district court.

WEDELL, J. (concurring in part and dissenting in part): I concur in the affirmance of the judgment on the merits if the district court had jurisdiction. I agree with what Mr. Chief Justice Dawson has ably said on the subject of the jurisdiction of the probate court. A few additional observations may be helpful.

The question presented is not whether an opponent of a will may appeal from an order admitting a will to probate. The question is *when* may he do so. First, it is elementary that a litigant may not invoke the jurisdiction of a court and abandon its jurisdiction before exhausting the relief that court can grant. This is doubly true where that court has exclusive original jurisdiction of the subject matter. Second, under the provisions of the new code the opponent of a will is required to make proof in the probate court of his defenses to probate after a prima facie case for probate has been made if he desires to defeat its probate.

We may start with the conceded proposition that the probate court has the exclusive original jurisdiction to determine whether it will make an order admitting a will to probate or an order refusing to admit a will to probate. Upon what must that court determine the order it will make? Obviously upon facts—evidence—and not upon mere allegations in pleadings which join issues of fact. The proponent of a will is required to support the petition for probate with evidence. (G. S. 1943 Supp. 59-2212.) The opponent of a will is required to first file his written defenses. (G. S. 1943 Supp. 59-2210.) Why is he required to file such written defenses? Manifestly one reason for the requirement is that the probate court may know definitely upon what ground, or grounds, the opponent will endeavor *to prove* the will should be defeated. The law provides for a trial. It also provides that on the trial *any issue of fact shall be determined by the probate court* in accordance with rules of evidence provided for civil cases by the code of civil procedure. (G. S. 1943 Supp. 59-2212.) This section is new. See 2 Bartlett's Kansas Probate Law and Practice, § 1023. It is thus apparent, and we have repeatedly held, that these various proceedings under the new code are now adversary in character. (*Egnatic v. Wollard,* 156 Kan. 843, 137 P. 2d 188; *Shively v. Burr,* 157 Kan. 336, 139 P. 2d 401; *Burns v. Drake,* 157 Kan. 367, 139 P. 2d 386; *In re Estate of Grindrod,* 158 Kan. 345, 361, 148 P. 2d 278.)

The legislature has expressly provided that in order for the opponent of a will to obtain the relief he seeks from the probate court there must be proof to support the requested order. G. S. 1943 Supp. 59-2213 provides:

"No judgment or decree shall be rendered in a probate proceeding without proof."

See, also, 2 Bartlett's Kansas Probate Law and Practice, §§ 1026, 1027. In the same work it is said:

"On a hearing for the probate of a will the burden of proof is upon the proponent of the will to show: (1) the testamentary character of the instrument, (2) the testamentary capacity of the testator, and (3) the due execution of the will in accordance with statutory requirements. These elements stand as the epitome of all the proponent is obliged to prove, and he may then rest upon the *prima facie* case made by this proof. It is consistent to say that this *prima facie* evidence stands and prevails, unless and until it is overthrown by ascertained facts. After a *prima facie* showing is made the vital question in a contest of probate is *whether the evidence of the opponents* of the will in support of their claim that the will is invalid is sufficient to overcome the *prima facie*

effect of the proponent's evidence, considered in connection with all the testimony. *This is a question of fact upon all the evidence,* including the will itself, the physical and mental condition of the testator, the nature and situation of his property, the natural claims of the legatees upon his bounty, his relations with and feelings toward them, and all the circumstances appearing in the evidence, aided by all reasonable and proper presumptions. *The conclusion of fact to be deduced from all this is for the court as the trier of facts."* (§ 1064.)

The jurisdiction of a court is the power to *hear and determine* a controversy. (21 C. J. S., Courts, § 15, 14 Am. Jur., Courts, § 160.)

It constitutes no answer to say that proof was made by the proponent concerning the validity of the will and hence some proof was adduced in the probate court. The proponent is not appealing. It is the opponents of the will who are appealing from the order of the court which has the exclusive original jurisdiction to grant the relief they seek. Until the opponents comply with the law which requires them to make proof in order to obtain the relief they seek the probate court cannot grant that relief. Until they adduce that proof they are making it impossible for the probate court to grant them the desired relief. They are evading its exclusive original jurisdiction to determine the matter before it. Manifestly their appeal prior to making such proof is premature and the district court is without original jurisdiction to grant the desired relief.

How can the probate court retain its exclusive original jurisdiction to fully hear and determine whether a will should be declared invalid if an opponent of the will can circumvent that jurisdiction by perfecting an appeal to the district court and then for the first time introduce his evidence in opposition to the will? It seems to me the question answers itself. If such an appeal is permitted the exclusive original jurisdiction of the probate court to fully hear evidence in opposition to the will and to determine its order accordingly will be completely nullified. We repeatedly have held that an action which is designed to defeat a will must be asserted in the probate court. It violates every pertinent statutory provision for trials in the probate court and nullifies the spirit of the code generally to now concede such an action must be brought in the probate court, as we have repeatedly held it must be, but to hold that it need not be tried in that court. If the action need not be tried in the probate court then the probate court, of course, does not retain exclusive original jurisdiction to determine whether the probate of a will should be denied. The opinion of the majority completely overlooks

the statutory provision for trials in the probate court and the provision for proof in that court. It rests its decision upon the technical ground that the appeal statute allows an appeal from an order admitting a will to probate. In the case of *In re Estate of Grindrod*, 158 Kan. 345, 148 P. 2d 278, we said:

"We do not believe we are justified in considering the appeal statutes entirely by themselves, as appellee does, and by so doing place upon them a construction out of harmony with other provisions of the probate code and one which obviously defeats the clear legislative purpose to grant to probate courts the exclusive original jurisdiction in will contest actions." (p. 350.)

Of course, the statute provides for an appeal from an order admitting a will to probate. It likewise provides for an appeal from an order refusing to admit a will to probate. (G. S. 1943 Supp. 59-2401.) But clearly the appeal statute, when considered with other related provisions of the code, as it must be in order to ascertain the true legislative intent, does not contemplate an opponent has a right of appeal from an order admitting a will to probate before the probate court has had an opportunity to consider the evidence in opposition to the will. In other words, the opponent has a right of appeal when he has exhausted the jurisdiction of the probate court to grant him the desired relief, and not before.

In *Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 438, we not only said the probate court had *authority to exercise* exclusive original jurisdiction in a will contest action but that it was by statute *required to exercise* such jurisdiction in order to *fully hear and determine* any matter properly before it. (p. 269.) Clearly no such decision could be made if the facts—the evidence—upon which the decision must rest may be withheld from that court. In the later case of *Yeager v. Yeager*, 155 Kan. 734, 129 P. 2d 242, following Foss v. Wiles, we expressly said:

"District courts now have jurisdiction in such matters only upon appeal." (p. 736.)

In *Dixon v. Fluker*, 155 Kan. 399, 404, 125 P. 2d 364, we said it was clearly intended the probate court should have the exclusive original jurisdiction *to hear* the claim on a contract for a portion of decedent's real estate and that otherwise the provisions of G. S. 1941 Supp. 59-301 (12), which give the probate court authority and directs it to *fully hear and determine* such a matter would be meaningless. In *Shively v. Burr*, 157 Kan. 336, 139 P. 2d 401, an action in damages for wrongful death, did we say that all that

was necessary was for the action to be filed in the probate court? No, indeed, we did not. After reviewing our numerous previous decisions under the new code we concluded:

"We hold, therefore, that the probate court where the estate of William Burr was being administered had *exclusive* original jurisdiction *to hear* the demand of the plaintiff in this action." (Emphasis supplied.) (p. 341.)

Manifestly that court could not hear a damage action without evidence. All of our previous decisions under the new code clearly have been based upon the theory and principle that the probate court has exclusive original jurisdiction not merely to receive pleadings, which indeed would not constitute jurisdiction at all, but that it has exclusive original jurisdiction to *entertain, hear and fully determine* any matter properly before it. Obviously that would be an utter impossibility without evidence to support controverted issues of fact.

With all these past decisions pertaining to the extent of probate court jurisdiction the instant majority opinion is in utter disharmony. Its practical effect is a complete repudiation of what this court with painstaking care, deliberate and conscientious consideration, has declared to be that court's jurisdiction according to the clear intent and purpose of both the framers and enactors of the new code. The majority opinion now holds that a claim or contention designed to defeat a will need no longer be originally asserted in and submitted to the probate court for its consideration and determination but that all evidence concerning its invalidity may be entirely withheld from that court and adduced originally in the trial of an appeal to the district court. In such a wholly inconsistent decision and backward step which strikes at the very heart of both the express provisions and the plain spirit of the new code, I cannot concur.

If the majority is correct in holding that an opponent of a will may appeal to the district court, although he has adduced no testimony in opposition to the will in the probate court, then by the same illogical reasoning the proponent of a will may appeal from an order refusing to admit a will to probate although he has offered no evidence in support of his petition for probate. The result will be that the district court will acquire original jurisdiction by judicial decree to hear evidence and to determine whether a will shall be admitted to probate. The majority opinion indeed will have far-reaching effects in denying the exclusive original jurisdiction of probate

courts. At this point we may well pause to inquire if the majority opinion is sound, then why cannot appeals be taken, without the introduction of evidence in the probate court, from the orders and judgment of the probate court concerning the twenty other subjects over which it has exclusive original jurisdiction, and from all of which appeals lie to the district court under the provisions of G. S. 1943 Supp. 59-2401.

The next question presented is the proper interpretation of G. S. 1943 Supp. 59-2408 with respect to the jurisdiction of the district court over matters not presented to the probate court. In my view the dissenting opinion of Mr. Chief Justice Dawson is the only practical and realistic interpretation that can be placed upon that statute. Moreover, his interpretation accords with the legislative intent and purpose as disclosed by other provisions of the new code. It is also in harmony with what we have said on the subject in the past. If entirely new matters may be raised in the district court the exclusive original jurisdiction of the probate court will be completely and effectually defeated. Of course, under such a practice the probate court would have had no opportunity to fully hear and determine the issues involved. If entirely new issues may be raised in the district court then this court will have placed its judicial sanction and approval upon a practice of effectually ambushing the probate courts. I cannot believe that was the legislative intent. (See my concurring opinion in the Grindrod case, p. 359-360.)

It will be noted G. S. 1943 Supp. 59-2210 does not permit an opponent of a will to file only one or some of his defenses. It plainly requires him to file his "written defenses." That means all of his defenses and not merely one or some of them. In my opinion the legislature made that requirement not only for the benefit of the probate court, which previously has been noted, but also in order that the district court may be fully advised from the transcript of the record what defenses were actually filed in the probate court. On appeal the law requires the probate court to transmit to the district court a complete transcript of the proceedings pertaining to the matter in which the appeal is taken. (G. S. 1943 Supp. 59-2406.) The legislature gave the probate court exclusive original jurisdiction over all defenses and not merely over some of them.

In *Erwin v. Erwin*, 153 Kan. 703, 113 P. 2d 349, where the procedure on appeal in the district court under the appeal statute was involved we early were careful to emphasize the fact that the inter-

vening petition filed by a widow, the administratrix, in the district court in nowise raised new or different issues from those presented, heard and decided in the probate court. In that case an oral contract of family settlement was involved. We said it was necessary that such contracts should be submitted to and approved by the probate court. With respect to the issue in the district court we said:

"The issue was not changed by the intervening petition which was filed by the widow in the district court pursuant to statutory authority." (p. 709.)

In the state of Michigan issues may be reframed in the circuit court (corresponding to our district court) on appeal from the commissioners on claims (corresponding to our probate court). In the case *In re Gzella's Estate*, 265 Mich. 371, 251 N. W. 550, and in a well-reasoned opinion based upon other decisions, the supreme court held that the circuit court in reframing the issues properly refused to include a setoff which had not been asserted before the commissioners on claims. It did so upon the express ground and well-established principle that the circuit court had no original jurisdiction over claims against estates and that therefore no new claim could be asserted in the circuit court.

It certainly will be a most humiliating experience for 105 probate judges in this state to find that on appeal they are being reversed by district courts with regularity due to no error committed by them but upon issues entirely foreign to any ever presented to them. It will no doubt be an astonishing revelation for them to learn that this court has declared it is wholly immaterial under our modern code that they should be apprised of the real, the honest, defenses to the probate of a will, and that such probate proceedings in 105 counties have degenerated into a mere pretext and sham at the expense of the taxpayers. Such a practice was not even permitted under the old code when probate courts were presumed to have far less jurisdiction and power than under the new code. In the case of *In re Estate of Hartley*, 148 Kan. 82, 80 P. 2d 1, we said:

"Another error is urged on our attention. It appears that in the mortgages securing the notes, which were the basis of appellant's claims in the probate court, there were recitals assigning to the mortgagee the rents of the properties to be applied on any delinquencies in payment of insurance, taxes and the like. *This matter was not called to the probate court's attention. It was first raised in the district court* when the cause was brought there on appeal. But while the cause on appeal is tried *de novo,* it is nevertheless an appeal, *and the matter of rents was not before the district court at the time."* (Emphasis supplied.) (p. 87.)

In my opinion it will be just as great a surprise to the legislature which enacted the new code to find we have held it was its intention to make of the probate court such a useless tribunal. The majority opinion indeed is a marked reversal of our former announcements that the modern tendency of courts generally is to extend the jurisdiction of probate courts and that such was the declared purpose of this court long before the adoption of the new code. (*Erwin v. Erwin,* supra, p. 707; *Foss v. Wiles,* supra, p. 270.)

What about the principal issue raised in the district court, namely, the alleged oral contract? That contract, of course, could have been asserted by the opponents of the will as a basis for the settlement and distribution of decedent's estate in contravention of the will. The question here is not whether a cause of action was stated upon the contract in the probate court. The point is that no attempt was made to assert such a contract in that court. That alleged contract was not even pleaded and, of course, it was not proved. As a means of contesting the will it was necessary under our repeated decisions that it be asserted first in the probate court. Since it was not there asserted by pleadings or proof, the district court acquired no jurisdiction over it as an instrument designed to contest the will. The only ground of contest ever pleaded in the probate court was that the signature of the testator was obtained by undue influence and coercion and no evidence was adduced in the probate court to support that contention.

The opponents of the will properly invoked the jurisdiction of the probate court which had the exclusive original jurisdiction and power to grant them the relief for which they prayed. They could not abandon that court without first exhausting its jurisdiction to grant them the relief they requested at its hands. Nor could they by such abandonment and a premature appeal confer jurisdiction on another court which was wholly without original jurisdiction to hear and determine their complaint.

PARKER, J. (concurring in part and dissenting in part): I concur in the affirmance of the judgment on the merits. I also concur in what has been said by Mr. Chief Justice Dawson in his dissenting opinion with respect to jurisdiction of probate and district courts.

In my remarks, although I do not concur in that conclusion as expressed in the majority opinion, I shall assume that under the notice of appeal presently referred to, the district court had jurisdiction to review the order of the probate court admitting the will of

B. J. Pallister to probate. Even so, I cannot subscribe to the view it thereby acquired power to pass upon the effect of the provisions of the alleged contract insofar as they determine rights to the property devised by the will.

Preliminary to a discussion of the jurisdictional question just mentioned it seems necessary to first give some consideration to the status of a will in a proceeding instigated for the purpose of avoiding its terms and provisions on the ground that during his lifetime the testator had orally agreed to leave a portion of his property to someone other than the one to whom it had been devised under the terms of such instrument.

If, as has been held by this court (*Yeager v. Yeager*, 155 Kan. 734, 129 P. 2d 242) an action which seeks to destroy the force and effect of a will, irrespective of whether its purpose is to get rid of it because invalid in its inception or to bring about a result contrary to the expressed intent of the testator, is in effect a will contest action, can it be said that every such action even if well founded and subsequently established defeats the probate of that instrument? I do not think so.

G. S. 1943 Supp. 59-601, provides that any person of sound mind, and possessing the rights of majority, may dispose of any or all of his property by will, subject to the provisions of the probate code. G. S. 1943 Supp. 59-2224, dealing with procedure on the hearing of a petition for probate of a will provides that any heir, devisee or legatee may prosecute or oppose its probate. I find nothing in the sections of the statute just referred to or in any other provisions of the new probate code which authorizes the probate court to refuse to admit a will to probate simply because someone claims to have made a contract with a decedent which the latter failed to perform.

Long ago in *Pee v. Carlyle,* 120 Kan. 200, 243 Pac. 296, this court laid down the rule that a will duly executed and attested by a testator possessing the requisite testamentary capacity, and who was under no restraint or undue influence at the moment of its execution, should be admitted to probate. In the opinion in that case it was said:

"Privilege to make a will would be a barren privilege if it did not extend to probate; . . . If it shall appear that the will was duly executed and attested, and that the testator possessed the requisite testamentary capacity and was under no restraint, the court shall admit the will to probate. (R. S. 22-218.) The law does that much for the dead man. Those who consider their interests may be affected by the will, may then fight over it like men and brothers." (pp. 202, 203.)

I realize the principle just referred to was enunciated prior to the enactment of the new probate code and under a statute which expressly required its pronouncement but, as I have heretofore indicated, I find nothing in the provisions of the new enactment to gainsay present application of that rule, which in my opinion, is the only practical interpretation to be given its provisions with respect to admission of a will to probate, and must be adhered to if the age-old rights of men to dispose of their property by testamentary devises are to be fully protected.

What I have just stated is not intended to imply that under the provisions of the new code there cannot be presented on the hearing for probate of a will objections which strike at the validity of such devise in its inception. Nor do I intend for any implication to be drawn from my conclusions to the effect there cannot be pending before the probate court, at the same time a petition for probate is under consideration, a proceeding which seeks specific performance of an oral contract in contravention of a specific devise made in a will which this court, prior to and since the enactment of the probate code, (*Yeager v. Yeager,* supra) has seen fit to refer to as an action to contest a will. From a procedural standpoint it is, however, in my opinion, one thing to defend against a will on some ground which if established would result in its being invalid or void, while it is an entirely different one to present to the probate court a contention which if sustained would result in a judgment that certain terms and provisions of the will by reason of the establishment of such contention become inoperative and cannot be carried out in accord with the intent expressed by the testator. If we are to dignify all of the proceedings to which I have just referred by considering them as will-contest actions then I believe it becomes necessary to keep in mind and recognize there are two general types of will-contest actions. One of them, if successful, results in a denial of probate. The other, although it possesses features the nature of which permit it to be termed a contest proceeding, does not defeat the will but permits its probate notwithstanding that thereafter if prosecuted to a successful conclusion it authorizes and requires a judgment that the contested term and provision, or the terms and provisions as the case may be, of the probated instrument are inoperative and ineffective because of a preëxisting contract or agreement of the testator which precludes the vesting of title in the person named as devisee therein. So regarded, I believe it becomes appar-

ent and must be conceded the first proceeding just referred to is, for all practical intents and purposes, a proceeding in the nature of a defense to a petition for admission of a will to probate, while the other is an affirmative proceeding in the nature of a claim against the decedent's estate to be considered after it has been first established such will is entitled to probate.

The views which I have just expressed, as will be presently disclosed, although they pertain to procedure in probate court, have a direct bearing on the jurisdictional question earlier referred to and to which I now direct my attention.

In order to fully comprehend the particular point I have in mind it will be necessary to briefly review the record in probate court. There the original proceeding was instituted by a petition praying that a certain instrument, alleged to be the last will and testament of B. J. Pallister, deceased, be admitted to probate. Pursuant to provisions of the probate code notice of the hearing on that petition was duly issued and served. On the date set for the hearing appellants, who are children of the decedent, filed an instrument which they designated as "petition in opposition to probate a will." Omitting formal allegations regarding the status of appellants as heirs of the decedent, that petition read:

"That these petitioners allege that the alleged instrument claimed to be the Last Will and Testament of said B. J. Pallister, deceased, is not in truth his Last Will and Testament and they expressly object to it being *per*mitted to probate as prayed for for the following reasons:

"(a) That the signature of the said B. J. Pallister upon the alleged instrument propounding to be his Last Will and Testament was obtained by fraud by coercion and undue influence.

"(b) That the said instrument alleged to be the Last Will and Testament of the said B. J. Pallister, deceased, was prepared or caused to be prepared by Ina T. Pallister and that at the time the said B. J. Pallister was induced to execute said instrument the said B. J. Pallister was incorrectly informed as to the terms and provisions contained in said Will.

"That the said Ina T. Pallister for the purpose of wrongfully and fraudulently depriving these petitioners from their lawful interest of their property of their father by use of undue influence and coercion forced the said B. J. Pallister to execute said instrument in violation of a prior agreement and contract which had been entered into by the said B. J. Pallister and these petitioners and also with the said Ina T. Pallister.

"By the reason of the facts set forth herein the said alleged will should be denied admission to record and probate."

The prayer was for an order denying admission of the will to probate and for such other relief as to the court might seem right, proper and equitable in the premises.

At the hearing the probate court found the will was duly attested and executed in all respects as provided by law, that the decedent was of full age, sound mind and memory, not under any restraint or undue influence, and admitted such instrument to probate. No order or judgment was made with respect to rights of the parties under the contract. In fact no other judgment could have been rendered. The appellants by their own pleading had limited their claim to matters which they expressly stated precluded the will from probate. They pleaded no facts which would entitle them to relief under the equitable doctrine of specific performance. They offered no evidence in support of that contract and they did not seek its performance. For that matter, if they had pleaded and proved it in exact accord with their contention the judgment so far as it pertained to probate of the will would have been identical although, of course, it must be conceded it would have then been the duty of the probate court under the equitable powers vested in that tribunal by G. S. 1943 Supp. 59-301(12), to have made an additional order decreeing specific performance of its established terms and provisions.

With the record in the state heretofore related, appellants filed their notice of appeal, which I quote:

"You and each of you are hereby notified that Mabel Colle, Glenn Pallister, Dixie Strickler, Thomas Pallister and Russell Pallister, appeals from the order, judgment, decree and decision of the Probate Court of Rice County, Kansas, rendered in the above entitled matter on the 16th day of July, 1942, in which the said Court made an order admitting to record and probate an instrument proporting to be the Last Will and Testament of B. J. Pallister, deceased."

All must concede that under the provisions of the new code, as interpreted by the decisions referred to in the majority opinion, the district court acquired such jurisdiction as it had in the instant proceeding by virtue of an appeal from the order, judgment, and decision of the probate court. Likewise conceded will be the statement that such an appeal can only be perfected by service and filing of written notice of appeal. Therefore, having conceded for purposes of this dissent the district court through the procedure followed by appellant had jurisdiction to review the order admitting the will to probate, my position must necessarily be, as it is, that the notice of appeal heretofore set forth *in toto* was so insufficient and defective that it failed to confer jurisdiction on, and precluded review on appeal by, the district court of matters pertaining to the right of the parties under the alleged contract. I believe such position is not

only tenable but required by the language to be found in applicable provisions of our statute.

G. S. 1943 Supp. 59-2401 deals with appealable orders under the present code. It lists, to be exact, twenty-one from which appeals may be taken. So far as pertinent here it reads:

"An appeal to the district court may be taken from any of the following orders, judgments, decrees and decisions of the probate court: (1) An order admitting, or refusing to admit, a will to probate. . . . (21) A final decision of any matter arising under the jurisdiction of the probate court."

G. S. 1943 Supp. 59-2405, has to do with the perfecting of an appeal. Provisions important for our purpose read:

"To render the appeal effective: (1) The appellant shall serve upon the adverse party or his attorney of record, or upon the probate judge for the adverse party, a written notice of appeal *specifying the order, judgment, decree, or decision appealed from,* and file such notice of appeal in the probate court with proof of service thereof verified by his affidavit. . . ." (Emphasis ours.)

With these sections of the statute in mind let us first carefully examine the notice of appeal heretofore quoted. Did it comply with their requirements? To me a negative answer is so obvious as to require little comment. True enough it did specifically state that appellants appealed from the order admitting to record and probate the will in question, but nowhere did it state the appellants appealed from the action of the probate court with respect to its order affecting the equitable remedy they there sought to invoke, namely, the specific performance of an oral contract. Within the four corners of the instrument one searches in vain for any specification of appeal from a judgment fixing the rights of the parties under the alleged contract or for failure of the probate court to determine those rights in the proceeding from which the appeal was taken. The omission to do so, in my judgment, is fatal to the evolution of any theory which permits consideration of the alleged contract in district court and requires the conclusion that court had no jurisdiction to hear and determine the effect of its alleged terms and conditions even when assuming, as I do for purposes of this dissent, the proceeding in probate court with respect to the order admitting the will to probate was properly before the appellate court for a trial *de novo.* Any other conclusion disregards the express language found in G. S. 1943 Supp. 59-2405, makes it meaningless, and destroys its force and effect.