### Ex parte Eugene SPICER.

### No. 313.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 10, 1969.

Rehearing Denied Sept. 24, 1969.

Robert S. Pieratt, Houston, for petitioner.

Jim Hamilton, Houston, for respondent.

Original Proceeding
Writ of Habeas Corpus

SAM D. JOHNSON, Justice.

Original habeas corpus proceeding. The relator, Eugene Spicer, has been adjudged in contempt by the Court of Domestic Relations No. 2 in Harris County, for failure to pay child support previously ordered. The order of commitment, signed July 17, 1969, fixed the punishment of the relator at confinement in the county jail for a period of three days and directed that he continue in jail until he purged himself by paying $2,480 which he was found to be in arrears. The relator filed a motion for hearing and release from jail. This motion was heard by the court below on August 15, 1969. After hearing the evidence thereon the court denied the relator's motion. The relator, therefore, continued in custody until released by this Court on August 27, 1969.

As the relator has already served the three days assessed against him as punishment for his disobedience of the court's order at the time the writ was granted we

are concerned only with the coercive part of the order. Ex parte Gonzales, 414 S. W.2d 656 (Sup.Ct.1967); Ex parte De-Wees, 146 Tex. 564, 210 S.W.2d 145 (1948).

The original judgment of divorce was entered on April 25, 1960. In such judgment the mother, Doris Spicer, was given the care, custody and control of the three minor children born of such marriage, and the father, Eugene Spicer, relator herein, was ordered to contribute to the support of his minor children in the sum of $50.00 every other week.

The instant petition for writ of habeas corpus is supported solely by the relator's claim of involuntary inability to perform the order of the court. The only testimony appearing in the record relative to this matter came from the relator himself. He was asked:

Q. Eugene, is there any possible way that you have or means of paying this amount of money?

A. No sir. There is not.

Q. Do you have any money at this time any place?

A. No.

Q. Do you have any property of any nature that you could offer as collateral in order to help you get this money?

A. No. I sure don't.

Q. Do you have any kinfolks that you could appeal to or any friends that you could appeal to in to get this money?

A. No sir.

Later, the interrogation continued as follows:

Q. Do you have any sort of means at all of offering any kind of property, whether real property or personal property that you could offer as collateral in order to obtain a loan?

A. No sir. I don't.

Q. Have you tried to borrow any money in order to help pay this amount of child support that you owe?

A. Yes sir, I have.

Q. Were you successful in trying to borrow this money?

A. Well, I borrowed a hundred dollars. That was all I was able to get.

Q. Do you owe any of it now?

A. Yes sir. I still owe fifty dollars.

In addition to the foregoing, the relator gave testimony relative to his employment as a driver since the divorce. He testified concerning the salary he received in such employment, his work record, his changes in employment, etc.

The burden of showing involuntary inability to perform in a case of this nature must be borne by the relator. Ex parte Padfield, 154 Tex. 253, 276 S.W.2d 247 (1955). Here the relator alone testified in his own behalf and his testimony was uncorroborated. He was quite clearly an interested party.

Only two other witnesses gave testimony. The first was a representative of the child support section of the Harris County Probation Department who testified concerning the record of child payments and the deficiency reflected by the record of payments maintained in that office. The second was the respondent, Doris Spicer, who testified in support of such record, who testified as to the number and ages of the children, and as to the need for support payments. There was no testimony from any source, however, which attempted to discredit, impeach, or disprove the assertions of the relator relative to his inability to make the payments ordered by the court. The record, in fact, reveals no inquiry even being made by counsel in this area.

Our Supreme Court has recently addressed itself to this subject. After summarizing the testimony of an incarcerated husband under somewhat similar circum-

stances the Court stated, "We hold that this testimony, although given by an interested party and uncorroborated, falls within the exception giving conclusive effect to such testimony where it is clear and positive and there are no circumstances in evidence tending to discredit or impeach it, and it is further strengthened by the fact that it was uncontradicted when there was a means and an opportunity for an opposite party to disprove the testimony if it were not true." Ex parte Rohleder, 424 S.W.2d 891 (Tex.Sup.1967).

We have here a situation where the relator was committed to jail on July 17, 1969. His motion for hearing and release was filed on August 12 and hearing thereon was then set for August 15, 1969. His testimony at such hearing, therefore, was after such period of confinement.

■ There is no indication of any similar restriction which might have limited the availability of testimony to the respondent. Her testimony indicates an acquaintance, if not a familiarity, with her former husband's previous employment and circumstances. Even so, no witnesses were called and no testimony was given which in any way tended to refute or discredit the assertions of the inability of the relator. The testimony of the relator was, "* * * of a nature that could have been contradicted either directly or circumstantially, if untrue." Ex parte Gonzales, supra. We are therefore compelled to conclude that this case falls well within the rule set forth in the Rohleder case, supra, above.

The relator is discharged.

BARRON, Justice (concurring).

I reluctantly concur with the majority in this case by reason of recent decisions by our Supreme Court such as Ex parte Rohleder, 424 S.W.2d 891 (Tex.Sup.), and cases therein cited.

I recognize the established rule that where it is not within the power of a person to perform the act which alone will purge him of contempt, the court is without power to imprison him for an indefinite term as punishment for an offense or offenses already committed. And I recognize the rule that if the evidence *conclusively* establishes that at the time of the contempt hearing relator did not have, and had no source from which he might reasonably be expected to obtain the delinquent child support payments, a court exceeds its power in ordering that relator be imprisoned until the delinquent payments are made.

In my opinion the evidence and the quoted testimony contained in the court's opinion are not conclusive. Relator made no offer to pay or assist in the support of his children in any way, though it is clear that he was employed prior to his commitment to jail on July 17, 1969. His testimony was general and not specific concerning his ability to pay and his efforts to obtain at least a portion of the arrearages, and it was such that his former wife, in the absence of careful preparation of her case and full anticipation beforehand of the substance of his testimony, could not have refuted successfully. In my opinion, considering the past acts of relator and his personal interest in the case in giving his testimony, the trial court, under the circumstances, should have had the lawful right to disbelieve relator totally. In my opinion, reasonable minds could surely differ as to the conclusion, either that he could or could not perform as ordered. The burden of proof was relator's.

I recognize that decisions of this type are difficult and that the applicable rules of law are necessary. Injustice and genuine harm can result, however, either to the defaulting parent or to the minor children involved. But I would not ordinarily agree that an interested party could take the witness stand and deny generally that he could pay at least a portion of the arrearages, make no offer to comply in any respect, and be discharged even though the record shows that he has been gainfully employed. His reasons for not being able to comply with the order of the trial court

should be specific and definite in all respects when the needs and welfare of his minor children are involved. Moreover, the trial court has full authority to correct a coercive order in a hopeless case.

Considering the state of the law in this regard, counsel representing the custodian and minor children of a defaulting parent are urged to prepare themselves to meet similar defenses which are almost sure to be raised in many cases.

The doctrine of res judicata is not necessarily applicable in a habeas corpus proceeding, the attack on the judgment being collateral and the question being whether the contempt order is void. See 39 C.J.S. Habeas Corpus § 104, pp. 695–697; Salinger v. Loisel, 265 U.S. 224, 230, 44 S.Ct. 519, 68 L.Ed. 989.

We cannot correct a trial court's order, reform it or reverse and remand the order on habeas corpus. Habeas corpus proceedings can only attack void orders. Ex parte Rhodes, 163 Tex. 31, 352 S.W.2d 249, 250. I concur with the majority because I believe this Court has applied the correct rules as laid down by the Supreme Court of Texas.