No. 36,520

In re Estate of ELLA ARNOLD DIX, Deceased (BILLY SMITH BYARS, *Appellee*, v. HENRY J. DIX, Administrator, *Appellant*).

(168 P. 2d 537)

*I. H. Stearns,* of Wichita, argued the cause, and *E. P. Villepigue* and *D. O. Potts,* both of Wichita, were on the briefs for the appellant.

*Samuel E. Bartlett,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter* and *Thomas E. Woods,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: The primary question for consideration in this appeal is the power and jurisdiction of the probate court to annul a marriage.

In a preliminary way, it may be said that under date of March 25, 1932, Ella Arnold executed her last will and testament in which she designated herself as of Stroud, Okla. By the will she gave certain legacies to named relatives and the residue of her estate to her grandniece, Billy Smith, whom she appointed as sole executrix. Thereafter Ella Arnold became a resident of Wichita, Kan. In September, 1942, she was married to Henry J. Dix. She died November 29, 1942, and on December 2, 1942, Billy Smith Byars, formerly Billy Smith, filed her petition in the probate court of Sedgwick county, which showed that she was a nonresident of Kansas, in which she referred to the testatrix as Ella Arnold, also called Ella Arnold Dix, and alleged, *inter alia,* the marriage of Ella Arnold and Henry J. Dix, set up the required information as to heirs, legatees and devisees, but not including Henry J. Dix, referred to the above mentioned will, and prayed for its admission to probate and for the appointment of an administrator with the will annexed. On December 26, 1942, Henry J. Dix filed his petition alleging that he was the husband of Ella Arnold Dix and as such her sole heir at law, and other matters pertaining to the homestead and the allowance due the surviving spouse and prayed that if the will of Ella Arnold Dix be admitted that he be appointed administrator with the will annexed, or if probate be refused that he be appointed administrator; that his homestead rights be confirmed and that he be awarded the statutory allowance to the surviving spouse. At the hearing on the petition of Billy Smith Byars held January 5, 1943,

the will of Ella Arnold Dix was admitted to probate and Henry J. Dix was appointed administrator with the will annexed. The record as abstracted does not disclose that any appeal was taken from this judgment nor any part of it. Henry J. Dix qualified and letters were subsequently issued to him.

The matters of immediate concern arise from a petition filed in the probate court on April 16, 1943, by Billy Smith Byars. In her petition she alleged that she was a grandniece of Ella Arnold and the residuary legatee under her will and named as executrix therein; that she had declined to qualify and Henry J. Dix had been appointed administrator with the will annexed; that she filed the petition as blood relative and heir of Ella Arnold for the benefit of herself and other heirs who might desire to join, and as legatee, devisee and named executrix of the will of Ella Arnold. Then follow a series of allegations that for a period of approximately one year before her death on November 29, 1942, Ella Arnold was old and mentally and physically infirm and incapable of entering into any contract of marriage or otherwise; that Henry J. Dix was fifteen years younger; that he commenced living at the home of Ella Arnold prior to May, 1942, and knowing her physical and mental condition proceeded to influence, control and dominate her, and that the two entered into an antenuptial contract, the terms of which are not disclosed by the record, and omitting some allegations of intervening matters that in September Ella Arnold was persuaded to go through a marriage ceremony with Henry J. Dix, who now claims to be entitled to all of her property. Then follow further allegations of the mental incapacity of Ella Arnold and that the contracts alleged were not her contracts but were brought about by the coercion and undue influence of Henry J. Dix and would have been against the will, wishes and desires of Ella Arnold had she been mentally competent, and that the alleged and pretended marriage was and is null and void and of no effect. The prayer of the petition consists of two paragraphs. The first prays for an order annulling, avoiding and setting aside the marriage contract and for a declaration that Ella Arnold died a single woman and that Henry J. Dix had no interest in her estate. The second paragraph prays for an order removing Henry J. Dix as administrator with the will annexed and that he be required to file a final settlement. A hearing was had upon this petition and on January 31, 1944, the probate court made certain findings of fact and en-

tered its judgment that the marriage between Ella Arnold and Henry J. Dix was wholly void for the reason that at the time thereof she was wholly lacking in mental capacity, and that he was not the surviving spouse, and not a proper person to be appointed administrator with the will annexed of her estate, and he was removed as such administrator. It was further ordered that he make an accounting forthwith. From this judgment Henry J. Dix appealed to the district court, which later affirmed and approved the judgment of the probate court and declared the marriage between Henry Dix and Ella Arnold null and void. Other parts of the judgment are not of present importance. In due time Henry J. Dix perfected his appeal to this court.

We are informed the question of jurisdiction was not raised at the times of trial in the probate court and in the district court, but subsequent to the time the appeal to this court was perfected, this court decided *In re Estate of Crump,* ante, p. 154, 166 P. 2d 684, holding among other things that probate courts do not have jurisdiction to entertain an action to annul a marriage and that on an appeal from a judgment of the probate court annulling a marriage, the district court acquires no jurisdiction. The specification of error presents only the question whether, under the circumstances, the probate court originally, and the district court on appeal, had jurisdiction to annul the marriage of Ella Arnold Dix and Henry J. Dix.

There is no contention to the contrary by appellee, but there is no doubt under our decisions that appellant may raise the question of jurisdiction at any time (*In re Estate of Pallister,* 159 Kan. 7, Syl. ¶ 1, 152 P. 2d 61) and whether the parties have raised the question or not, it is the duty of this court to inquire whenever it appears there is any question as to jurisdiction. (*Shively v. Burr,* 157 Kan. 336, 337, 139 P. 2d 401.)

Appellant relies solely on the decision in *In re Estate of Crump,* supra, wherein it was held:

"Probate courts do not have jurisdiction to entertain an action to annul a marriage.

"A judgment of a probate court annulling a marriage, in an annulment action commenced therein, is void for lack of jurisdiction of the subject matter, and upon attempted appeal therefrom to the district court, the district court acquires no jurisdiction of the action by virtue of such appeal." (Syl. ¶¶ 3, 4.)

Appellee contends that the instant case is not governed by the Crump case, and our attention is directed to matters hereafter mentioned.

It may be noted that in the Crump case, the petition was filed in the probate court by the guardian of an insane person to procure annulment of the marriage of his ward. The ward died before any hearing was had. The proceeding was revived in the name of the administrator of the deceased ward, and then tried. The prayer of the petition was for annulment of the marriage and that the petitioner have such other and further relief as to the court might appear right and proper in the premises. Although the petition in the Crump case was filed before death of the spouse on whose behalf an annulment was sought, after death and revivor the action was quite like the one now under consideration. In the instant case, the prayer is for annulment, and instead of a broad prayer for other relief, specific relief is asked, and that "petitioner have all other proper relief."

Appellee directs attention to language in the decision in the Crump case (l. c. 159) that the action was simply one for annulment and that the court need not consider whether upon a proceeding to determine the heirs the probate court would have power, absent annulment proceedings, to make a finding Sallie Crump was not an heir for the reason the marriage was void. After directing attention to the probate code provision respecting equitable powers (G. S. 1943 Supp. 59-301 [12]), and that an action to avoid a marriage on the ground of mental incapacity is an equitable proceeding (*Westerman v. Westerman,* 121 Kan. 501, 247 Pac. 863; *Fourth Nat'l Bank v. Diver,* 131 Kan. 113, 289 Pac. 446), appellee says that invalidity of the marriage arose in connection with four matters upon which it was necessary for the probate court to pass in the administration of the decedent's estate, i. e. (1) preference in appointment of an administrator, (2) homestead rights, (3) statutory allowances and (4) right of a spouse to elect against a will. Each of these four divisions is made the basis for comment and argument, the general effect of which is that a determination of rights under any of them must include a determination of any question the marriage was valid and Henry J. Dix was the legally surviving spouse. Our attention is also directed to decisions from other jurisdictions. They have been examined but will not be discussed, in view of what is later said.

In the Crump case, *supra*, consideration was given to the power and jurisdiction of the probate court to annul a marriage, and of the power and jurisdiction of the district court on appeal, and in that case consideration was given to the equitable powers of the probate court as applicable to its original jurisdiction and powers, and it was held the probate court had no jurisdiction to entertain an independent action to annul a marriage. There is no need to repeat what was said in that opinion.

Appellee insists, however, that her petition was not an independent action for an annulment of the marriage, but that she sought determination of the four questions heretofore noted, and the probate court had jurisdiction to make that determination and therefore the right and power to invoke the equitable powers granted to it by the probate code (G. S. 1943 Supp. 59-301 [12]). It may be observed the grant of equitable powers is not unlimited, but is restricted to matters properly before the probate court.

A mere reading of appellee's petition, as abstracted above and as fully set forth in the abstract, shows there is no allegation respecting preferential appointment of an administrator, homestead rights, statutory allowances, or right to elect against the will, but only allegations going to claimed invalidity of the marriage. The first paragraph of the prayer is that the marriage be annulled and Henry J. Dix declared to have no interest in the estate, and the second paragraph is that Henry J. Dix be removed as administrator with the will annexed and that he be required to render a final accounting, and be discharged from his trust "and that this petitioner have all other proper relief." A fair reading of the petition shows that the primary purpose was that the marriage be annulled. With that accomplished, the remaining matters now urged are solved as questions of law insofar as Henry J. Dix is concerned, for if he is not the surviving husband he has no right to administer the estate, no homestead rights, no right to statutory allowances and no right of election under the will.

The petition filed by the appellee did not disclose a situation where the probate court was called upon merely to determine the status of Ella Arnold Dix and Henry J. Dix. It was pleaded affirmatively that they were husband and wife and fixed their status as such and facts were then pleaded intended to justify and warrant a judgment altering and changing that status. The effect of what

370

was asked and of the judgment rendered in the probate court was to make and create status and not to determine what it was. If the status of husband and wife was to be changed by action of a court, the original and exclusive jurisdiction of such an action was in the district court and not in the probate court. (Const., art. 2, § 18, G. S. 1935, 60-1501 *et seq.* as amended.) The only power of the probate court to create status, under the probate code, is by proceedings for adoption of children. (See G. S. 1943 Supp. 59-2101 to 59-2104 and 59-2277 to 59-2279.) Provisions for marriage are not included in the probate code, nor is there any provision in the probate code for divorce or annulment. The probate court's first duty was to inquire as to its jurisdiction and when it found it had none it should have dismissed the proceeding.

It having been concluded the probate court had no jurisdiction in the premises, the district court acquired none on appeal.

The judgment of the trial court annulling the marriage is reversed and the cause is remanded with instructions to vacate its judgment annulling the marriage and to direct the probate court to dismiss the proceedings pending in that court.

HARVEY, C. J. (dissenting in part): I am of the opinion that the district court on appeal from the probate court had jurisdiction of the subject matter of the controversy under G. S. 1943 Supp. 59-2408, "as though the controversy had been commenced by action or proceeding in such court."

SMITH, J., concurs in the foregoing dissent.