No. 44,277

MARY LOU SMALL, *Appellee*, v. JAMES OWEN JOSEPH SMALL, et al., *Appellant*.

(407 P. 2d 491)

Opinion filed November 6, 1965.

*Gene R. Martin*, of Kansas City, Missouri, argued the cause, and *James W. Dahl*, of Kansas City, was with him on the briefs for the appellants.

*J. Willard Haynes*, of Kansas City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal, involving a dispute over jurisdiction of the person of the defendant and the subject matter of the action, grew out of a judgment in contempt for violation of a child custody order in an action for separate maintenance and other relief.

The facts which pertain to the jurisdictional questions are to be gleaned from the pleadings, the affidavits and oral testimony of the

plaintiff. The nature of the controversy requires a somewhat lengthy presentation.

The plaintiff and defendant were married December 14, 1958, at Tonda, Manila, Philippines. Prior to the marriage, plaintiff had lived in Wyandotte County, Kansas. Just before her marriage to defendant she was living in a separate apartment in her mother's house where she had her own furniture and personal things. She paid her mother rent for this apartment while she was living there. When she left to get married, she left her furniture in the apartment because she could not take it with her.

At the time of their marriage defendant was residing in Manila where he was employed by TWA as their district transportation manager. Plaintiff and defendant lived and made their home in Manila for the next nine months. At that time TWA discontinued its office in Manila and defendant was transferred to Bombay, India.

In the meantime plaintiff became pregnant. When defendant was transferred to Bombay plaintiff returned to the United States so that her child would be born in this country. The child in question, Marie Elizabeth Small, was born November 2, 1959, at a hospital in Kansas City, Missouri from which the child and plaintiff left to live in the apartment maintained by plaintiff's mother in her home. On December 23, 1959, approximately seven weeks after the baby's birth, plaintiff and the child left Kansas City, Kansas, where she had been staying, and rejoined the defendant to live in Bombay, India. Plaintiff, defendant and the child resided in Bombay for approximately one and one-half years until October 1961. At that time defendant was transferred to Cairo, Egypt where he is now employed for TWA as their district transportation manager.

Since defendant's transfer to Cairo defendant and the child have resided in Cairo and are living and making their home there at the present time. Plaintiff resided with her husband and child in Cairo until April 23, 1963, approximately one and one-half years. She then came to the United States for the purpose of securing treatment for a back injury. At that time the child remained at the home in Cairo.

The plaintiff testified:

". . . The child was left in Cairo with a servant, a private nanny who lived in her room, slept with her, spoke seven languages, so she felt that the child was in perfectly good hands. The nanny had cared for the baby ever since they were in Cairo, about a year and a half. 'Nanny' is British, like a maid, it's an English term and refers to a child's nurse. She felt that the

child was in good hands and that the nanny was competent to take care of the child. ,. . ."

It was plaintiff's intention to return to her husband and child in Cairo after receiving treatment. However, sometime later, probably three or four months after she had arrived, she decided not to go back. She has continued to live in Kansas City, Kansas since April 23, 1963, to the present.

Subsequent to the marriage, because of the employment of the defendant, James Owen Joseph Small, with Trans World Airlines, the plaintiff and defendant were required to live wherever defendant was employed, which at all times subsequent to the marriage was outside of the territorial limits of the United States.

Neither the plaintiff, the defendant nor the child were in the United States after the birth of the child except for short visits and when the plaintiff came to Kansas City for treatments in April of 1963.

The procedural facts will next be stated in their chronological order.

On November 29, 1963, the plaintiff filed her petition for separate maintenance in which, among other things, she stated the child was in the possession and custody of the defendant in Cairo, Egypt, that the defendant had funds on deposit with the TWA Club Credit Union and was drawing a salary from TWA. The prayer of the petition was for separate maintenance, custody of the child, alimony and that the defendant be enjoined from receiving and the proper officers be enjoined from paying to defendant the funds deposited or the salary due defendant.

On the day the petition was filed the trial court issued a restraining order as prayed for in the petition.

No attempt has ever been made to obtain service of summons upon the defendant.

The defendant appeared specially on January 31, 1964, and filed a motion to dismiss the action on the grounds the court was without jurisdiction of the person of the defendant; the defendant had not been properly served with process, and the petition failed to state a claim against the defendant upon which relief could be granted. This motion was overruled February 13, 1964.

On March 30, 1964, plaintiff filed a motion for an order changing custody of the minor child during the pendency of the action. On March 31, 1964, defendant filed a motion to dismiss the action insofar as it pertained to child custody for the reason it appeared

upon the face of the petition and plaintiff's motions and affidavits that the court did not have jurisdiction of the subject matter because the child was not physically present in the county and it was not domiciled in the state of Kansas.

The court, on April 28, 1964, entered an order granting custody of the child to plaintiff during the pendency of the action and directing the defendant to deliver the child to plaintiff in Kansas City, Kansas. Defendant's motion to dismiss was overruled.

Plaintiff filed a motion on October 20, 1964, for an order fixing a time for the delivery of the child. On October 27, 1964, the court directed defendant to deliver the child to plaintiff on or before November 25, 1964.

On December 3, 1964, plaintiff filed a motion requesting that defendant be cited for contempt. On the same day the court issued an order commanding defendant to appear and show cause, if any, why he should not be accused, placed on trial and punished for contempt. On December 30, 1964, the court directed plaintiff to refile her written accusation, directed defendant to answer and set the matter for hearing on February 19, 1965. The defendant answered stating again that the court did not have jurisdiction over the subject matter or the person of defendant, he had not been properly served with summons and the court was without jurisdiction in the contempt proceedings.

The trial court, on February 26, 1965, entered an order finding the defendant guilty of indirect contempt and enjoined TWA from paying him any wages or salary until he purged himself of the contempt. The defendant has appealed from the contempt order. The appellant contends:

"1. The orders of April 17, 1964, and October 23, 1964, were null and void because the court was without jurisdiction of the subject matter, the child of the parties, and

"2. The orders of April 17, 1964, and October 23, 1964, were null and void because the court was without jurisdiction over the person of the defendant and could not make a valid order personally ordering and directing him to bring and deliver the child to plaintiff, and

"3. The court was without jurisdiction over the person of the defendant and could not validly try and adjudge him in contempt."

The statement of a few general principles of law may tend to limit the issues to be considered.

Although the disobedience of an erroneous order made by a court within its jurisdiction is contempt, the contra rule is disobedience of an order made by a court without jurisdiction of the

subject matter or the person of the defendant is not contempt. (*Bridgeport Machine Co. v. Arthur A. Beard, Inc.*, 135 Kan. 711, 11 P. 2d 990; *State, ex rel., v. Wilson*, 162 Kan. 507, 178 P. 2d 277; 17 C. J. S., Contempt, § 14, p. 38.)

In a proceeding for child custody the subject matter or *res* is the child.

It is a well established rule of this court that jurisdiction of a court to consider and give custody of a child to one parent or the other depends in principle upon the domicile of the child. (*Tompkins v. Garlock*, 189 Kan. 425, 370 P. 2d 131; *Hannon v. Hannon*, 186 Kan. 231, 350 P. 2d 26; *Moloney v. Moloney*, 163 Kan. 597, 185 P. 2d 167; *Kruse v. Kruse*, 150 Kan. 946, 96 P. 2d 849; *Wear v. Wear*, 130 Kan. 205, 285 Pac. 606.)

The new code provides the only conditions under which the district court shall have jurisdiction to make provisions for the custody of a child as follows:

". . . if (*i*) the child is physically present in the county, or (*ii*) domicile of the child is in the state, or (*iii*) the court has previously exercised jurisdiction to determine the custody or care of the child who was at such time domiciled in the state. . . ." (K. S. A. 60-1610 [a].)

It is clear that conditions (*i*) and (*iii*) are not applicable to the situation before us and need not be considered further. The court could not have had jurisdiction of the subject matter unless the domicile of the child was in the state of Kansas.

Under the facts as presented we have no difficulty in concluding that domicile of the child was not in this state.

A child acquires a domicile as soon as it is born, and if the father is living, it takes the domicile of its father. During minority the domicile of the child continues to follow the domicile of the father without regard to the acutal place of residence. The law also assigns to a woman upon her marriage the domicile of her husband at the time of the marriage and whenever during the marriage his domicile changes, hers follows and changes with it. Thus, as long as the parents are living together, the domicile of the wife and child is that of the husband and father. If the parents separate due to a breach of the marriage relationship and the wife lives apart from her husband, it is generally held that she can acquire a domicile separate from that of her husband. However, a temporary separation due to the health of the wife would not change the wife's domicile from that of her husband's. In the event the parents do acquire separate domiciles, then the child of the parties takes the

domicile of the parent with whom it lives in fact. (*Robben v. Robben,* 188 Kan. 217, 362 P. 2d 29; *Wear v. Wear,* supra.)

Appellee's testimony is narrated in part as follows:

". . . Plaintiff testified that when she married the Defendant, her home was in the Philippines; that when they were transferred to Bombay, that was home, '*Where my husband was was home.*' When they were transferred to Cairo, that was home. After her back injury about a year and a half ago, her purpose in returning to the United States was, 'To see if my back could be corrected and to see how my mother was, . . .' After receiving medical treatment, '*it was my every intention to return to Cairo, to my husband and my child.*'" (Emphasis supplied.)

There is no indication that the appellant, the father, ever lived in this state.

We are forced to conclude that the trial court had no jurisdiction of the subject matter of the child custody proceeding.

The failure of appellant to raise a specific objection to the court's jurisdiction over the child until after his answer was filed did not affect the jurisdiction. (K. S. A. 60-212 [*h*] [2].) A question of the jurisdiction of the subject matter may be raised at any stage of the proceedings (*In re Estate of Dix,* 161 Kan. 364, 168 P. 2d 537; *In re Estate of Weaver,* 175 Kan. 284, 262 P. 2d 818) and it cannot be waived by failure to make timely objection (*In re Richards,* 106 Kan. 105, 186 Pac. 1025). In fact, it is the continuing duty of a court to determine on its own initiative whether it has jurisdiction of the subject matter. (*Shively v. Burr,* 157 Kan. 336, 139 P. 2d 401; *Kelly v. Grimshaw,* 161 Kan. 253, 167 P. 2d 627; *Jeffers v. Jeffers,* 181 Kan. 515, 313 P. 2d 233; *Leach v. Leach,* 184 Kan. 335, 336 P. 2d 425; *Bammes v. Viking Manufacturing Co.,* 192 Kan. 616, 389 P. 2d 828.)

The appellant next contends the court lacked jurisdiction over the person of the appellant and therefore it was without authority to direct any order to him.

No process has ever been served, or attempted to be served, upon appellant in the original suit and none was served upon him in connection with the contempt proceeding. The only attempt at service was by registered mail addressed to appellant in Cairo, Egypt, enclosing an attested copy of the citation to show cause and the order for the citation to issue which was returned "Refused."

The appellee suggests the appellant voluntarily entered his appearance and subjected himself to the jurisdiction of the court.

The petition was filed on November 29, 1963. On January 31,

1964, after the new Code of Civil Procedure became effective, appellant appeared specially and moved the court as follows:

"1. To dismiss the action on the ground that this court is without jurisdiction of the person of the defendant.

"2. To dismiss the action on the ground the defendant has not been properly served with process in this action.

"3. To dismiss the action because the petition fails to state a claim against defendant upon which relief can be granted."

The appellee contends that under the provisions of K. S. A. Chapter 60 there is no such thing as a special appearance and when appellant included as one of the grounds for dismissal the failure of the petition to state a claim against defendant upon which relief could be granted he entered his general appearance.

We cannot agree with appellee's contention. It is true that the new Code of Civil Procedure makes no provision for special appearances. This does not mean that the relief has been abolished. K. S. A. 60-212 (*b*) provides the manner of raising questions of jurisdiction. We quote in part as follows:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a claim upon which relief can be granted; (7) failure to join an indispensable party. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. *No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.* . . ." (Emphasis supplied.)

All of the defenses listed above which may be made by motion must be made at the same time or they are waived. K. S. A. 60-212 (*h*) provides:

"A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except (1) ·that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, and the objection of failure to state a legal defense to a claim may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and except (2) that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. . . ."

The defense of lack of jurisdiction may be asserted by motion with other defenses without waiving the objection. (*Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F. 2d 871, cert. den. 322 U. S. 740, 64 S. Ct. 1057, 88 L. ed. 1573.)

The old distinction between a general and special appearance loses its significance under K. S. A. 60-212 (*b*) as a party may plead to the merits and at the same time contest jurisdiction over his person. The purpose of the provisions is to permit the combining of an objection to the jurisdiction with pleadings on the merits without the old ritual of first entering a special appearance. (*United States v. Balanovski*, 236 F. 2d 298, cert. den. 352 U. S. 968, 1 L ed. 2d 322, 77 S. Ct. 357, reh. den. 352 U. S. 1019, 1 L ed. 2d 561, 77 S. Ct. 555.) This court has not heretofore had occasion to pass upon the particular question but as K. S. A. 60-212 (*b*) was taken from Federal Rule 12 the construction placed upon the language of the subsection by the federal courts is entitled to great weight.

We must conclude that under the facts stated the appellant did not enter a general appearance nor waive the objection to the jurisdiction of the person. The child custody order, having been made without jurisdiction over the child or the person of the defendant, was void and could form no valid basis for a judgment and order of indirect contempt.

The judgment and order of indirect contempt is reversed.

APPROVED BY THE COURT.