No. 46,422

Barbra Sue Hicks (Formerly Barbra Sue Hefner), *Appellee,* v. Andrew E. Hefner, *Appellant.*

(499 P. 2d 1147)

Opinion filed July 19, 1972.

*Paul L. Aylward,* of Minor and Aylward, of Ellsworth, argued the cause and was on the brief for the appellant.

*John V. O'Donnell,* of Ellsworth, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: Plaintiff-appellee brought this action to recover past due child support payments which had been awarded by the District Court of Jackson County, Texas, on January 6, 1964. Defendant-appellant herein was plaintiff in the Texas divorce action. Both parties have remarried and for convenience the plaintiff-appellee will be referred to as Barbra or appellee and the defendant-appellant as Andrew or appellant.

The dispositive issue is whether, under full faith and credit, a Kansas court can convert past due child support payments awarded by a Texas court into a lump sum judgment enforceable in Kansas.

In the Texas divorce action, Andrew was granted a divorce; Barbra was awarded custody of the two minor children, subject to reasonable visitation by Andrew; Barbra was to receive $200 per month for child support; and the community property of the parties was divided.

Thereafter, on November 16, 1964, on the request of Andrew, the Texas court modified and clarified the visitation rights.

Barbra moved to New Mexico shortly after the divorce where she remarried and presently resides. Andrew now resides in Ellsworth. Andrew made the child support payments until midyear of 1965.

In January 1970, Barbra filed this action in Ellsworth County, attaching as exhibits to her petition copies of the original Texas decree and the subsequent modification concerning visitation. In her petition Barbra alleged that Andrew had failed to pay the child support payments since April of 1965, and that there was due her the sum of $11,400.00 for which she prayed judgment.

On February 5, 1970, Andrew filed a motion in the instant case requesting additional time to plead. On the same date Andrew filed an "Application for Reformation and Modification of Support Order" in the Texas court of original jurisdiction. In his application Andrew alleged that he had been adjudged a bankrupt in 1966, and that since then he had been unable to secure employment that would allow him to make the original support payments. Andrew further alleged that in the interest of justice the support payments should be reduced to $100 per month and that the back payments—which he owed—be declared null and void. Barbra appeared by counsel in the Texas courts in this proceeding.

The trial court stayed further proceedings in the instant case until the Texas proceedings were resolved.

On June 29, 1970, the Texas court modified the original support order by reducing the amount to $120, consisting of $60 per month for each child, but made no ruling concerning past due support payments—the only mention made being as follows:

"THE Court being informed that DEFENDANT was not seeking recovery of past due support in this hearing."

On October 2, 1970, Andrew filed his answer to Barbra's petition in the case at bar. In his answer, Andrew admits Barbra's allega-

tions setting out the Texas divorce decree, but alleged that her petition fails to state a cause of action and as affirmative defenses further alleged that (1) judgment cannot be entered for any arrearage under the Texas decree; and (2), in the alternative, that the action of Barbra is barred by the statute of limitations of the State of Texas with reference to child support orders.

On October 27, 1970, the parties appeared for trial and stipulated to the authenticity of the copies of the Texas proceedings. No parol evidence was submitted. After oral arguments concerning pertinent Texas statutes and case law, the trial court made tentative rulings in pertinent part as follows:

"I should say at this point I cannot believe that the fact that this type of obligation does not give rise in the State of Texas to a judgment in Texas, should in any way keep this court from granting judgment on the obligation. . . ."

The court then permitted counsel to file briefs on the question of applicable statutes of limitations. On December 29, 1970, the trial court filed a written memorandum decision ruling in essence that Andrew's duty to make child support payments was contractual having been a part of a property settlement agreement, approved by the Texas court, in the original divorce decree. The court proceeded to apply the Texas four-year statute of limitations (Vernon's Texas Ann. Civil Statute, Art. 5527, [indebtedness evidenced by a contract in writing]), and rendered judgment in the amount of $9,600, calculated at $200 per month for the four years prior to January 14, 1970.

Andrew makes a statement of five points in his brief; however, we need consider only two in disposing of the appeal. They read as follows:

"4. That the court erred in holding that a Texas decree for child support is enforceable by an action for the recovery of money when under Texas law such decree can only be enforced by contempt proceedings.

"5. This action was based on the Texas decree of divorce and no pleading or evidence supports the court decision that this is an action on contract."

The constitutional mandate of Article Four, Section One of the Constitution of the United States is that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state; and further that Congress may by general laws prescribe the manner in which such acts and proceedings shall be provided and the effect thereof. Congress in 28 U.S.C.A., § 1738, has prescribed, as pertinent herein:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions *as they have by law or usage in the courts* of such State, Territory or Possession from which they are taken." (Emphasis supplied.)

In the application of the foregoing by state courts, the general rule is that a judgment rendered by a court of one state is entitled, in the courts of another state, to recognition, force or effect to the same extent and with as broad a scope as it has by law or usage in the courts of the state where the judgment was rendered. On the other hand, no greater effect need be given to any judgment of a court of one state than is given to it in the state where rendered. (47 Am. Jur. 2d, Judgments, § 1218, pp. 224-226; Restatement of the Law 2d, Conflict of Laws, 2d, Judgments, § 109, p. 322.) Kansas adheres to the foregoing. (*Smolinsky v. Federal Reserve Life Ins. Co.*, 126 Kan. 506, 268 Pac. 830; *Robinson v. Railway Co.*, 96 Kan. 137, 150 Pac. 523; and *Bleakley v. Barclay*, 75 Kan. 462, 89 Pac. 906.)

The judgment rendered by the trial court in the case at bar gives effect to the Texas support order which Barbra could not have secured under the law or usage in the courts of Texas. Contrary to Kansas law, (*Hains v. Hains*, 187 Kan. 379, 357 P. 2d 317; and *Ortiz v. Ortiz*, 180 Kan. 334, 304 P. 2d 490.), past due child support payments do not become judgments under Texas law. Under Texas law child support may be awarded in the form of periodical payments or by a judgment in a fixed amount. The judgment in either form is subject to modification.

Authorization for an award of child support under Texas law is provided for in Article 4639a, Vernon's Ann. Civil Statute. It reads:

"Section 1. Each petition for divorce shall set out the name, age, sex and residence of each child under eighteen (18) years of age born of the marriage sought to be dissolved, if any such child or children there be; and if there be no such child or children, then the petition shall so state. No court having jurisdiction of suits for divorce shall hear and determine any such suit for divorce unless such information is set out in such petition or in each cause of action for divorce. Upon the trial of any such cause, and in the event a divorce is granted by the court, if there are such minor children, it shall be the duty of such trial court to inquire into the surroundings and circumstances of each such child or children, and such court shall have full power and authority to inquire into and ascertain the financial circumstances of the parents of such child or children, and of their ability to contribute to the support of same, and such court shall make such orders regarding the custody and support of each such child or children, as is for the best interest of same; and said court may by *judgment*, order either parent to make *periodical payments* for the

benefit of such child or children, until same have reached the age of eighteen (18) years, or, *said court may enter a judgment* in a fixed amount for the support of such child or children, and such *court shall have full power and authority to enforce said judgments by civil contempt proceedings* after ten (10) days notice to such parent of his or her failure or refusal to carry out the terms thereof, and for the purpose of ascertaining the ability of the parents of such child or children to contribute to the support of same, they may be compelled to testify fully in regard thereto, under penalty of contempt of court, as in other cases. *Said court shall have power and authority to alter or change such judgments, or suspend the same, as the facts and circumstances and justice may require,* upon notice to such parent as above provided for, or with his or her consent." (Emphasis supplied.)

Section 3 of Art. 4639a further provides:

"The authority herein conferred upon the Court to alter, change, or supersede the provisions of *judgments* providing for the support of minor children, and the authority conferred upon the Court to enforce such *judgments* may be exercised by the Judge of said Court in vacation." (Emphasis supplied.)

Under the foregoing statutes a Texas court may do one of two things—(1) order periodical payments for child support to become due in the future until the child reaches the age of eighteen; or (2) enter a judgment for a fixed amount for child support. The plain language of the statutes clearly grant the court power and authority to alter or change such *judgments*, either by increasing or decreasing as the facts, circumstances and justice may require. Obviously, any change in a "fixed amount" judgment would be a retrospective modification. Since the same authority to "alter or change" is given with respect to both judgments it seems clear to us that a judgment for past due periodical payments for child support would also be subject to retrospective modification. This appears to be the construction given the statutes by Texas courts. (*Davi v. Davi,* 456 S. W. 2d 238, [Tex. Civ. App. Texarkana, 1970, and cases cited therein].)

Because enforcement procedures are limited to proceedings in civil contempt the matter of retrospective modification usually comes about by a finding in contempt coupled with an order permitting purge by the payment of some fixed lesser amount. (See *Ex Parte Kollenborn,* 154 Texas 223, 276 S. W. 2d 251, [1955]; and *Ex Parte Spicer,* 444 S. W. 2d 829, [Tex. Civ. App. 14th Dist., 1969.]).

The limited enforcement procedure with respect to past due child support payments under Art. 4639a, *supra,* was established by the Texas Supreme Court in the case of *Burger v. Burger,* 156 Texas 584, 298 S. W. 2d 119. Mrs. Burger sued for a money judgment in the

sum of $5,315.00 representing the arrearage at $300.00 per month of child support payments due from her defendant husband. Mrs. Burger was successful in the trial court and her judgment was affirmed in the Texas Court of Civil Appeals. The Supreme Court reversed, holding that the trial court had no power to enter a judgment such as that sought by Mrs. Burger. The court held that the only remedy for enforcing an order for child support is a civil contempt proceeding. The court interpreted the purpose and thrust of 4639a in these words:

"'. . . The statute is so enacted to meet an urgent situation, specially designed in the interest and for the benefit of the minor child, or children, and enforceable only by contempt. The order is not final; it may be altered, changed or suspended by the court entering the order, as the facts, circumstances, and justice may require. The wife has no pecuniary interest in the award; her interest is merely the promptings of a mother's filial obedience to the demands of her offsprings (sic) that they have necessary support. The order is not enforceable, other than by the means provided by the statute.' . . ." (p. 587.)

Under the holding in *Burger* a Texas decree, awarding periodical child support payments, cannot be considered a final judgment when suit is brought thereon in a sister state such as in the case confronting us here, and this holds true regardless whether the payments dealt with are past due or prospective. It must be kept in mind, of course, that our consideration herein is limited to an action brought on a Texas decree as distinguished from a common law action for support or a proceeding instituted under the provisions of the Uniform Reciprocal Enforcement of Support Act, K. S. A. 1971 Supp. 23-451, *et seq.* It should be further noted that our holding here is based on Texas law which was presented to the trial court and to this court on appeal. Thus, any presumption that the Texas law was the same as that of Kansas is foreclosed. Unlike the situation in *Burnap v. Burnap,* 144 Kan. 568, 61 P. 2d 899, the Texas law is not similar to that of Kansas. In dealing with a Colorado judgment for child support in *Burnap* we found that a Colorado judgment was final and that a court had no power to modify its judgment with respect to amounts due and unpaid, the Colorado law being the same as the law of Kansas.

While this is the first appearance of a Texas child support decree before this court, the courts of several other states have been confronted with the identical problem. The most recent case to come to our attention is *Robertson v. Cason,* 203 So. 2d 743, (La. App. 2nd

Cir. 1967). The suit was brought on a Texas judgment awarding $30 weekly child support payments which had accrued and were unpaid. The Louisiana Court of Appeals held that although the Texas decree of divorce was a valid and final judgment entitled to recognition under the full faith and credit clause of the United States Constitution, the provisions of the decree dealing with child support were subject to modification under the law of Texas and thus full faith and credit was rightly denied by the trial court to provisions pertaining to installment payments for child support.

In the *Robertson* opinion the court reasoned:

"The provisions of a foreign judgment pertaining to accrued child support payments may be accorded full faith and credit unless by the law of the state where rendered the decree is subject to modification as to accrued installments at the discretion of the court. Where the decree is final and not subject to subsequent modification it must be recognized and enforced without modification of accrued installments in a suit arising in a state other than the one in which the decree was rendered. Sistare v. Sistare, 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905, 28 L. R. A., N. S., 1068, 20 Ann. Cas. 1061 (1909); Cf. Barber v. Barber, 323 U. S. 77, 65 S. Ct. 137, 89 L. Ed. 82, 157 A. L. R. 163 (1944); Weston v. Weston, 177 La. 305, 148 So. 241 (1933); Devore v. Devore, La. App. 172 So. 2d 923 (4th Cir. 1965). . . ." (p. 745.)

After considering the Texas statutes (Art. 4639a) and a number of Texas decisions the Louisiana court, in the *Robertson* case concluded:

"The foregoing authorities make clear that the provisions for child support as contained in the Texas decree were subject to modification and change and may not be considered final. The Louisiana Court, therefore, rightly denied full faith and credit to the provisions of the Texas judgment pertaining to installment payments for child support." (p. 745.)

The Supreme Court of Oklahoma—in a closely divided (5 to 4) decision—held adversely to the *Robertson* decision in the case of *Catlett v. Catlett*, (Okla. 1966), 412 P. 2d 942. In *Catlett* the rationale of the majority opinion seemingly rested on the premise that despite what appears to be the express authority granted a Texas court under the provisions of Art. 4639a, an award of child support was not subject to retroactive modification. Cases from Oklahoma, Texas and other states, including Kansas, are cited in the majority opinion in support of the proposition that a divorce degree of a court of a sister state awarding alimony or child support is entitled to full faith and credit protection. The cases cited, however, appear to deal with situations where matured, unpaid child support or alimony payments have become absolute and

vested under the law of the state of original jurisdiction, such as in the case of Kansas. In the case at bar, the payments are not absolute or vested and to give the Texas decree the effect sought by Barbra would be to accord it force and effect far beyond that which it would receive in Texas. In our opinion, to permit the gaining of this end by the vehicle of full faith and credit is clearly beyond the contemplation of the constitutional mandate and the implementing direction of Congress. In the opinion for the dissent in *Catlett*, Vice-Chief Justice Jackson points out that in Texas past due child support payments could not be the basis of a money (lump sum) judgment, they could not be enforced by garnishment or execution and they do not create a debt or a vested right. Justice Jackson also discusses cases cited in the majority opinion and fully reconciles them with the point of view expressed in the dissenting opinion. He further points out that in Texas, "involuntary inability to pay" is a good defense in a civil contempt action, which operates, as in *Ex Parte Kollenborn*, supra, to give the practical effect of a retrospective modification. In *Kollenborn* the former husband was in arrears to the extent of $1,700 in child support payments and was ordered to be confined in contempt until he purged himself by the payment of $1,000 to the wife, thus working a restrospective modification in the amount of $700. (See, also, *Ex Parte Spicer*, 444 S. W. 2d 829, [Tex. Civ. App. 14th Dist., 1969.]).

The Oklahoma Supreme Court approved an Oklahoma trial court judgment for unpaid child support payments awarded by a Texas decree in the case of *Clark v. Clark*, (Okla. 1962), 380 P. 2d 241. The reason given, however, was:

"The law of Texas was not pleaded in the record in the instant case. Thus, the trial court was constrained to presume that it was the same as that of Oklahoma concerning power of modification. . . ." (p. 243.)

Since Texas law was not presented in the *Clark* case, it is of no consequence with respect to the issue before us.

Appellee also cites *Williams v. West* (Ky. 1953), 258 S. W. 2d 468, in which the court of appeals of Kentucky refused to treat a Texas child support decree as interlocutory insofar as it related to payments accrued prior to the filing of the Kentucky action. The *Williams* decision was prior to *Burger v. Burger*, (1957), supra, and the succeeding Texas cases which we believe have fully established Texas law on the subject.

To our knowledge, the most recent Texas case dealing with the subject is *Ranford v. Ranford,* 475 S. W. 2d 590 (Tex. Civ. App., Dallas, 1971, Rehearing denied Jan. 14, 1972). William Ranford was found, by the lower court, to be $2,000 in arrears in child support and he was ordered to pay it in monthly installments. He appealed on the ground that the order of the lower court was invalid as a matter of law; his position was sustained and that part of the order of the lower court was reversed. In the *Ranford* opinion the court summarized Texas cases on the subject and stated:

"It is well settled in Texas that the trial court has no authority to render a personal judgment against a parent for accumulated unpaid child support. Vernon's Ann. Civ. St. of Texas, Article 4639a, gives the court 'full power and authority to enforce said judgments by civil contempt proceedings,' and civil contempt proceedings are held to be the only remedy for enforcement of child support orders. . . ." (p. 591.)

We have carefully examined other cases cited by appellee and even though some older cases demonstrate some inconsistencies in Texas decisions, we are fully convinced that the current law of Texas is that stated in *Ranford v. Ranford,* supra.

We next give our attention to the proposition whether the original Texas child support order was based on an agreement of the parties. As we have previously indicated, the trial court, on October 2, 1970, after hearing the evidence and arguments of counsel, announced a tentative decision in favor of Barbra for four years child support payments at $200 per month on the theory that even though child support payments never become a judgment in Texas, the order of the Texas court, nevertheless, created an indebtedness; contractual obligation was not mentioned. The court announced at that time that its decision was tentative and "Subject to looking at any authorities that Mr. Aylward may have indicating that a two-year statute instead of a four-year statute of limitations would apply." On December 29, 1970, the trial court filed its written decision in which it found:

"It is beyond question that in the original proceeding in Texas the parties entered into a property settlement agreement that included an agreement for child support in the amount of $200 per month payable by this defendant to this plaintiff. . . ."

Appellant (Andrew) takes vigorous exception to this finding on two grounds. First, that this was an ordinary action brought on a sister state judgment with no mention being made of contractual

obligation until it was injected for the first time by the trial court in its final decision, and, second, there is absolutely no evidence to show that the child support order was based on or stemmed from any agreement of the parties in that regard. We agree with the appellant's position on both grounds.

Apparently, the trial court concluded there had been an agreement with respect to child support from language appearing in the original decree. The findings of the Texas court in the original decree appears in paragraph form. Child support is provided for in paragraph 3 which simply reads:

"The Plaintiff shall contribute towards support and maintenance of said minor children the sum of $200.00 per month until said children reach the age of 18 years."

Paragraph 4 sets out the property to be received by Andrew, it lists the items and then concludes:

"Defendant agrees to execute all instruments of conveyance order to carry out the agreement herein approved."

Likewise, paragraph 5 awards Barbra, defendant herein, as her sole and separate property the property listed and concludes:

"Plaintiff shall execute any necessary instruments to carry out the terms of this property settlement agreement."

The order and adjudication of the court reiterates the findings verbatim. Obviously, the parties either before or at the time of trial arrived at a division of property and agreed to execute any necessary instruments to carry out the terms of the property division, but we fail to see how this can be construed to serve as a basis for concluding that child support was also agreed to when the court made no mention of any agreement in the child support order in paragraph 3. Also, we think it highly indicative that no mention of an agreement or any contractual arrangement regarding child support was made in any of the subsequent proceedings of the Texas court—the ruling to clarify visitation rights made on November 16, 1964, and, particularly, the modification of child support payments made on June 5, 1970. Both of these proceedings dealt with the child support and custody provisions of the original decree. We also deem it worthy of note that the record is void of any proof offered by Barbra that the child support order was based on an agreement. We must agree with appellant that there is no evidence in the record to support a finding that the child support order was based on an agreement. Moreover, while we do not rest our decision

on the proposition, recent Texas cases indicate that even though there was evidence of a contractual obligation, it would not effect the decision in the instant case. We find this statement in the recent case of *Davi v. Davi*, 456 S. W. 2d 238 (Tex. Civ. App., Texarkana, May 12, 1970):

". . . But if this court be mistaken in concluding that the support provision of the original judgment is not contractual in nature, it becomes immaterial in the particular proceeding. Neither an agreement between the parties respecting child support nor a judgment entered pursuant thereto precludes a district court from thereafter exercising the powers and duties given the court by Art. 4639a. (citing cases.)" (pp. 240-241.)

A similar holding appears in *Duke v. Duke*, 448 S. W. 2d 200, (Tex. Civ. App., Amarillo, 1969.)

In the *Davi* case the court was confronted with a journalized decree quite similar to that before us—the decree ordered child support in one paragraph and in a separate paragraph approved a property settlement agreement which included a paragraph pertaining to child support; however, since the child custody and support division in the original judgment neither approved nor referred to a support payment, the court concluded:

". . . The record here for consideration does not show on its face the support order was the result of a contract, or that it is contractual in nature. . . ." (p. 240.)

In view of what has been said the judgment of the trial court must be reversed.

It is so ordered.