No. 50,260

Mary Jane Guernsey Keller, *Appellee*, v. Floyd Guernsey, *Appellant.*

(608 P.2d 896)

Opinion filed April 5, 1980.

*W. Fredrick Zimmerman,* of Thompson, Duckers & Verbanic, of Kansas City, argued the cause and was on the brief for appellant.

*J. R. Russell,* of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Holmes, J.: This appeal and cross-appeal involves the attempts of a divorced mother to obtain child support for the minor children of the dissolved marriage. Defendant/appellant and cross-appellee, Floyd Guernsey (Floyd), appeals from an order of the Wyandotte District Court determining and ordering the payment of current and future child support for his two minor children. The plaintiff/appellee and cross-appellant, Mary Jane Guernsey Keller (Mary Jane), is the former wife of Floyd and the mother of his two minor children. She cross-appeals from an order of the court denying her claim for a lump sum judgment for past due unpaid child support allegedly owed under an order of the Family Court of New York.

The facts are not in dispute. Floyd and Mary Jane were residents of and married in New York. Two children were born to Mary Jane during the marriage: Floyd Tracy, born September 20, 1965, and Patrick Arthur, born November 14, 1966. Floyd does not deny that he is the father of the two children or that they were born in wedlock. Mary Jane filed an action in the Family Court of Oswego County, New York, on December 12, 1967, for support

under the New York Family Court Act. On February 27, 1968, an order was entered by the Family Court directing Floyd to pay $25.00 per week beginning March 1, 1968, for the support of Mary Jane and the two children. The money was ordered paid to the Commissioner of Oswego County Social Services as reimbursement for assistance being provided to Mary Jane. Floyd failed to comply with the order and on April 19, 1968, was sentenced to six months in the Oswego County jail. It appears he served the sentence. Upon his release, Floyd paid support sporadically until sometime in 1970 when he left New York and moved to Kansas. Following Floyd's departure, Mary Jane filed suit in the Supreme Court of New York for a divorce which was ultimately granted April 7, 1972. Service had been obtained by publication. Mary Jane was granted custody of the two minor children and the divorce decree orders "[t]hat all future questions of support of said children and alimony for the plaintiff shall be referred to the appropriate Family Court of the State of New York having jurisdiction over such matters." Nothing further seems to have happened until 1976.

On August 10, 1976, Mary Jane filed an action in the Family Court of Oswego County, New York, under the Uniform Reciprocal Enforcement of Support Act. Floyd was served in Wyandotte County on August 30, 1976; however, nothing further transpired and on January 21, 1977, the action was dismissed by the court in New York because Mary Jane was no longer residing in that jurisdiction, having moved to North Carolina. The case was then dismissed in Wyandotte County in March, 1977.

On June 13, 1977, this action was filed by Mary Jane seeking (1) a judgment for at least $10,000 (later alleged to be $11,050.00) for unpaid past due child support accrued under the New York Family Court order of February 27, 1968, and (2) an order for the future support of the two minor children. Personal service was obtained on Floyd. On August 2, 1977, the court ordered Floyd to pay the sum of $20.00 per week per child for child support which was raised by a subsequent order to $50.00 per week for each child effective November 4, 1977. The case was finally tried on February 24, 1978. On June 7, 1978, after receiving briefs from the parties, the court ruled (1) that under the laws of the State of New York no valid support judgment was in effect which could be enforced in Kansas; (2) that the support orders of the Wyan-

dotte County court were valid and enforceable against Floyd; and (3) future support beginning June 15, 1978, was fixed at the sum of $50.00 per week for the support of both children. Both parties have appealed.

We will first address the cross-appeal of Mary Jane. She has appealed from the denial of a judgment for past due support based upon the February, 1968, order of the Family Court of New York. She contends that the 1968 order created an ongoing obligation for Floyd to pay support and is entitled to be enforced in Kansas under the full faith and credit clause, Article IV, Sec. 1, of the United States Constitution.

Article IV, Sec. 1, provides:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

In the recent case of *Hicks v. Hefner,* 210 Kan. 79, 499 P.2d 1147 (1972), this court was faced with a similar set of circumstances. The plaintiff Barbra Hicks brought an action in Ellsworth District Court to recover past due child support payments from her ex-husband, Andrew Hefner, based upon an order of the district court of Jackson County, Texas. At the time of the divorce both parties were residents of Texas. Subsequently Barbra moved to New Mexico and Andrew moved to Ellsworth County, Kansas. On the matter of granting full faith and credit under the Constitution, we stated:

"In the application of the foregoing [Article IV, Sec. 1] by state courts, the general rule is that a judgment rendered by a court of one state is entitled, in the courts of another state, to recognition, force or effect to the same extent and with as broad a scope as it has by law or usage in the courts of the state where the judgment was rendered. On the other hand, no greater effect need be given to any judgment of a court of one state than is given it in the state where rendered. (47 Am. Jur. 2d, Judgments, § 1218, pp. 224-226; Restatement of the Law 2d, Conflict of Laws, 2d, Judgments, § 109, p. 322.) Kansas adheres to the foregoing. (*Smolinsky v. Federal Reserve Life Ins. Co.,* 126 Kan. 506, 268 Pac. 830; *Robinson v. Railway Co.,* 96 Kan. 137, 150 Pac. 523; and *Bleakley v. Barclay,* 75 Kan. 462, 89 Pac. 906.)" p. 82.

The court reviewed the Texas statutes and decisions and found that Texas child support payments do not become final judgments at the time they become past due but may be altered, changed or suspended by the Texas court as the facts, circumstances, and justice may require. Our court then stated:

"[A] Texas decree, awarding periodical child support payments, cannot be considered a final judgment when suit is brought thereon in a sister state such as in the case confronting us here, and this holds true regardless whether the payments dealt with are past due or prospective. It must be kept in mind, of course, that our consideration herein is limited to an action brought on a Texas decree as distinguished from a common law action for support or a proceeding instituted under the provisions of the Uniform Reciprocal Enforcement of Support Act, K.S.A. 1971 Supp. 23-451, *et seq.* It should be further noted that our holding here is based on Texas law which was presented to the trial court and to this court on appeal. Thus, any presumption that the Texas law was the same as that of Kansas is foreclosed.

. . . .

"In the case at bar, the payments are not absolute or vested and to give the Texas decree the effect sought by Barbra would be to accord it force and effect far beyond that which it would receive in Texas. In our opinion, to permit the gaining of this end by the vehicle of full faith and credit is clearly beyond the contemplation of the constitutional mandate and the implementing direction of Congress." *Hicks v. Hefner,* 210 Kan. at 84 and 86. (See also K.S.A. 60-1611.)

## McKinney's Consolidated Laws of New York; Domestic Relations Law, Sec. 244, provides:

"**§ 244. Enforcement by execution of judgment or order in action for divorce, separation or annulment.**

"*Where the husband* in an action for divorce, separation or annulment, or declaration of nullity of a void marriage, or a person other than the husband when an action for an annulment is maintained after the death of the husband, *makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the court in its discretion may make an order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires* having a regard to the circumstances of the respective parties, together with ten dollars costs and disbursements. The application for such order shall be upon such notice to the husband or other person as the court may direct. Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments . . . *provided that when a judgment for such arrears or any part thereof shall have been entered pursuant to this section, such judgment shall thereafter not be subject to modification under the discretionary power granted by this section;* and after the entry of such judgment the judgment creditor shall not hereafter be entitled to collect by any form of remedy any greater portion of such arrears than that represented by the judgment so entered." (Emphasis added.)

The statute makes it abundantly clear that in New York past due child support payments do not automatically become judgments against the delinquent spouse. The person seeking a judgment in New York must apply to the court; the delinquent spouse is entitled to notice and the court "in its discretion may make an

order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires . . . ." It was conceded at argument before this court that no action has been taken in the New York courts to comply with the New York statute. Mary Jane would not be entitled to a judgment in New York without further proceedings under the laws of that state and as held in *Hicks:*

"No greater effect need be given by a court of the forum state to any judgment of a court of another state than is given to it in the state where the judgment was rendered." Syl. ¶ 2.

"In view of the Texas statute, Vernon's Texas Ann. Civil Statute, Art. 4639a giving a Texas court power to alter child support payments, the provisions for child support in a decree of a Texas District Court are subject to modification, are not final and are not, by reason of full faith and credit, a basis upon which a Kansas court may render a lump sum judgment for accrued past due payments." Syl. ¶ 3.

We find no error in the trial court's ruling denying Mary Jane a lump sum judgment for past due support under the New York order. In view of our finding it is not necessary to consider the other arguments on this point.

We now turn our attention to Floyd's appeal. The district court found that it had jurisdiction to enter orders for the support of the minor children and we agree. Floyd contends the court had no such jurisdiction because of the provisions of K.S.A. 60-1610(*a*), (amended 1979), which provided in part:

"**60-1610. Decree.** A decree in an action under this article may include orders on the following matters:

(*a*) *Care of minor children.* The court shall make provisions for the custody, support and education of the minor children, and may modify or change any order in connection therewith at any time, and shall always have jurisdiction to make any such order to advance the welfare of a minor child if (*i*) the child is physically present in the county, or (*ii*) domicile of the child is in the state, or (*iii*) the court has previously exercised jurisdiction to determine the custody or care of a child who was at such time domiciled in the state."

It should be noted that the statute was amended in 1979 to provide that custody provisions may be made only when the court has jurisdiction under the uniform child custody jurisdiction act. (K.S.A. 1979 Supp. 38-1301 *et seq.*) As custody is not an issue, the 1979 amendment has no bearing on the case before the court.

It is appellant's argument that the enactment of K.S.A. 60-1610(*a*) establishes the jurisdictional parameters of the district court in all matters pertaining to the support of minor children,

including proceedings under the Uniform Reciprocal Enforcement of Support Act (K.S.A. 23-451 *et seq.*) Mary Jane argues the statute has no application and concedes that the requirements of 60-1610(*a*) have not been met. The children were not physically present in the county, the children were not domiciled in Kansas and the Wyandotte District Court had not previously exercised jurisdiction over the custody or care of the children. K.S.A. 60-1601 *et seq.*, govern actions filed in Kansas for divorce, separate maintenance and annulment of marriage. Orders entered by the court under 60-1610 apply to "a decree in an action under this article . . . ." and subsection (*a*) of the statute mandates that in such an action the court shall make provisions for the support and education of the minor children. However, nothing in the act precludes an action under proper circumstances against a parent for support of minor children based upon the common law duty to support such children. The jurisdictional forum prescribed by 60-1610(*a*) applies when there are or have been proceedings under article 16 of chapter 60. We have also held it determined the jurisdictional forum for proceedings under the 1951 Uniform Reciprocal Enforcement of Support Act (K.S.A. 23-419 *et seq.*, now repealed) when there had been prior proceedings under 60-1601 *et seq. Wheeler v. Wheeler,* 196 Kan. 697, 414 P.2d 1 (1966). Floyd relies heavily on *Wheeler.* In *Wheeler* the parties originally obtained a divorce in Shawnee District Court and custody of the minor child was awarded to the mother, Dorothy H. Wheeler. Several years later Dorothy, residing in California, brought an action for support under the uniform act against her former husband who had become a resident of Johnson County. In the action under 23-419 *et seq.*, the Johnson District Court entered an order against the father and he appealed asserting that the court lacked jurisdiction. This court found that the original jurisdiction of the Shawnee court was continuing, that the Johnson District Court should have transferred the proceedings to Shawnee District Court and ordered the judgment reversed and remanded the case with directions to transfer the matter to Shawnee District Court for further proceedings. *Wheeler* did not decide jurisdiction in an action to enforce the common law duty of support and appellant's attempted reliance upon it is misplaced. We are not called upon, and do not here decide whether the enactment of the 1970 uniform act and K.S.A. 23-460 modifies our holding in *Wheeler.*

The duty of a parent to provide for minor children is one now universally recognized and one which has long been the law in Kansas. In *Grimes v. Grimes,* 179 Kan. 340, 295 P.2d 646 (1956), this court said:

"The support of children, like their custody, is a matter of social concern. It is an obligation the father owes to the state as well as to his children. He has no right to permit them to become a public charge. (Separation Agreements and Ante-Nuptial Contracts, Part Two [Rev. Ed.], Lindey, page 257, § 15.)

"In *Doughty v. Engler,* 112 Kan. 583, 584, 211 Pac. 619, we said:

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

" 'By the great weight of judicial opinion in this country parents are under a legal duty, regardless of any statute, to maintain their legitimate minor children (20 R.C.L. 622), the obligation being sometimes spoken of as one under the common law and sometimes as a matter of natural right and justice, and often accepted as a matter of course without the assignment of any reason. Chancellor Kent says: "The wants and weaknesses of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law." (2 Kent's Commentaries *189.) Blackstone begins his discussion of the duties of parents to legitimate children thus:

" ' "The duty of parents to provide for the maintenance of their children, is a principle of natural law; an obligation, says Puffendorf, laid on them not only by nature herself, but by their own proper act, in bringing them into the world; for they would be in the highest manner injurious to their issue, if they only gave their children life that they might afterwards see them perish. By begetting them therefore, they have entered into a voluntary obligation, to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus the children will have a perfect right of receiving maintenance from their parents." (1 Blackstone's Commentaries, 447.)' " p. 343.

Mary Jane has contended throughout these proceedings that her cause of action for future support for the children was based upon the common law duty of Floyd and was for the benefit of the children.

In *Strecker v. Wilkinson,* 220 Kan. 292, 298, 552 P.2d 979 (1976), we stated:

"Support of children, like their custody, is a matter of social concern. It is an obligation the father owes the state as well as his children. (*Grimes v. Grimes,* 179 Kan. 340, 295 P.2d 646.) The parental duty to provide for the support and maintenance of a child continues through the child's minority, and the obligation to support may be enforced by an action at any time during the child's minority."

Floyd attacks the foregoing statement from *Strecker* by stating in his brief:

"The holding in the *Strecker* case, supra, is based upon the theory that if a father does not support his children, the state will be forced to provide said support under the doctrine of *parens patriae.* This theory does not apply to the case on appeal for the reason that the minor children of the appellant do not and have never lived in the State of Kansas and, therefore, are not beneficiaries of the support or aid which might be offered by the State of Kansas." p. 6.

Such an argument is not only fallacious but fellifluous. To argue that a parent's duty of support may depend upon which taxpayers are burdened with the responsibility, absent such support, justifies no further comment by this court.

It is further contended that the enactment of 60-1610(*a*) and 23-451 provide the only means for enforcing a delinquent parent's duty of support. K.S.A. 23-453 and 454 provide:

"The remedies herein provided are in addition to and not in substitution for any other remedies."

"Duties of support arising under the law of this state, when applicable under section 7 [23-457], bind the obligor present in this state regardless of the presence or residence of the obligee."

It is readily apparent that nothing in the uniform act was intended to replace any other remedy available to enforce the duty of support. See *Thompson v. Kite,* 214 Kan. 700, 522 P.2d 327 (1974).

Floyd also relies heavily on the custody case of *Small v. Small,* 195 Kan. 531, 407 P.2d 491 (1965), wherein the court approved the following language of Commissioner Hatcher:

"In a proceeding for child custody the subject matter or *res* is the child.

"It is a well established rule of this court that jurisdiction of a court to consider and give custody of a child to one parent or the other depends in principle upon the domicile of the child. (*Tompkins v. Garlock,* 189 Kan. 425, 370 P.2d 131; *Hannon v. Hannon,* 186 Kan. 231, 350 P.2d 26; *Moloney v. Moloney,* 163 Kan. 597, 185 P.2d 167; *Kruse v. Kruse,* 150 Kan. 946, 96 P.2d 849; *Wear v. Wear,* 130 Kan. 205, 285 Pac. 606.)

"The new code provides the only conditions under which the district court shall have jurisdiction to make provisions for the custody of a child as follows:

" '. . . if (*i*) the child is physically present in the county, or (*ii*) domicile of the child is in the state, or (*iii*) the court has previously exercised jurisdiction to determine the custody or care of the child who was at such time domiciled in the state. . . .' " p. 535.

It should be noted that *Small* involved a Kansas separate maintenance action and the question of custody, not the common law duty of support. For a court to determine a question of custody it is only logical that the court have some jurisdictional contact with

the *res* of the action; that is the minor child or children. In the enforcement of the common law duty of support, the presence or absence of the child or its domicile is not a controlling factor. We do not consider the language or holding in *Small* to be determinative of the issue before this court which is solely the jurisdiction of the Wyandotte District Court to enforce a defaulting parent's common law liability to contribute to the support of the children.

A parent's duty of support may be enforced in civil proceedings in one or more of at least three ways. Depending upon the circumstances of the individual case, the proper remedy may be: (1) proceedings under 60-1610(*a*); (2) proceedings under 23-451 *et seq.*; or (3) an action to enforce the common law duty of support. In the case at bar, where there were no proceedings under 60-1601 *et seq.*, Mary Jane was free to select either of the other two alternatives. Having once instituted proceedings in New York under the uniform act only to have them subsequently dismissed, she chose to proceed, on behalf of the children, to bring a separate action to enforce Floyd's common law duty of support.

We have carefully considered all the authorities propounded by Floyd, most of which are custody cases involving questions of domicile, and do not find them controlling of the single issue raised by his appeal. Failure to meet the criteria of K.S.A. 60-1610(*a*) did not deprive the trial court of jurisdiction to enforce the common law duty of parental support of the minor children.

The judgment of the trial court on both the appeal and the cross-appeal is affirmed.